For the reasons set forth in the foregoing Memorandum, it is hereby

**ORDERED** that the law firm of Bickel & Brewer show cause why sanctions should not issue against the firm, with any response due three weeks from the date of this Order. It is further

**ORDERED** that the motion to vacate the May 4, 1998, Memorandum and Order and the motion to vacate the November 21 and December 19, 1997, Memoranda and Orders are **DENIED**.

**Michael H. BOSTRON, et al., Plaintiffs,**

v.

**Kenneth S. APFEL, et al., Defendants.**

**Civ. No. H–97–3154.**

United States District Court,
D. Maryland,
at Baltimore.

Aug. 24, 1998.

E. David Hoskins, Law Offices of Peter G. Angelos, P.C., Baltimore, MD, H. Thomas Howell, William F. Gately, Howell, Gately, Whitney & Carter, L.L.P., Towson, MD, for plaintiffs.

Donna C. Sanger, Assistant United States Attorney, Larry D. Adams, Assistant United States Attorney, Baltimore, MD, for defendants.

ALEXANDER HARVEY, II, Senior Judge.

Three employees of the Social Security Administration (the "SSA") have here filed a class action complaint alleging discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 623, *et seq.* and under the Fifth Amendment to the United States Constitution.[1] Plaintiffs, who are white males, claim that they have been subjected to illegal reverse discrimination as a result of the SSA's implementation of affirmative action policies and programs.

Presently pending before the Court is plaintiffs' motion for class certification. Plaintiffs ask that this case be maintained as a class action on behalf of a class of plaintiffs, which would include all white males employed by the SSA at the GS–12 and GS–13 levels who were not selected or promoted or who were otherwise subjected to illegal, disparate treatment. At a scheduling conference held after defendants had answered the complaint, counsel for plaintiffs requested that the Court address at an early stage their proposed motion for class certification. A Preliminary Scheduling Order was accordingly entered directing that discovery pertaining to the class action issues should begin and that such discovery should relate to the question whether plaintiffs' claims satisfied the requirements of Rule 23, F.R.Civ.P. A schedule for the completion of discovery and for the filing and briefing of plaintiffs' motion seeking class certification was set by that Order. Thereafter, interrogatories were served and answered by both plaintiffs and defendants, documents were produced and depositions were taken.

The parties have now submitted lengthy memoranda and voluminous exhibits in support of and in opposition to plaintiffs' pending motion for class certification, including excerpts from depositions taken during the preliminary discovery period. A hearing on the pending motion has been held in open court. For the reasons to be stated herein, plaintiffs' motion for class certification will be denied.

## I

### Background Facts

The headquarters of the SSA are located in Woodlawn, Maryland. At this site, there are ten Deputy Commissioner offices and several Associate Commissioner offices. Besides its headquarters site, the SSA maintains throughout the United States ten regional offices, six Program Service Centers, three Data Operations Centers, three Teleservice Centers and over thirteen hundred hearing and field offices.

As of 1996, there were 65,567 persons employed by the SSA. A majority of these employees are located at the SSA's headquarters in Woodlawn. As of September 30, 1995, there were throughout the country 3,311 white males employed by the SSA at the GS–12 level and 1,793 employed at the GS–13 level.

Pursuant to 42 U.S.C. § 2000e–16, the SSA like other federal agencies has prepared on an annual basis an Affirmative Employment Plan ("AEP") designed to eliminate discrimination in employment. Plans prepared by the SSA contain, *inter alia*, work force analyses examining the distribution of women and minorities in job categories and promotions, recruitment and training initiatives and numerical objectives for increasing the representation of under represented groups in specific grade levels. Based on SSA's overall AEP, each regional office and component of the SSA develops its own AEP based on the composition of employees within that individual office.

Plaintiffs rely on statistical evidence in support of their motion for class certification. An AEP "Tracking Report" for fiscal year ("FY") 1994 indicates that out of 141 promotions to the GS–13 to 15 levels, white males received only 39% of the selections although comprising 54.9% of the work force

---

1. The complaint named as defendants John J. Callahan, Acting Commissioner of the Social Security Administration, and Donna Shalala, Secretary of the Department of Health and Human Services. Kenneth S. Apfel is now Commissioner of the Social Security Administration and has been substituted for John J. Callahan as a defendant in this case.

at those levels. An AEP "Accomplishment Report" for FY 1995 relating to SSA employees in the Office of the Deputy Commissioner for Operations indicates that from FY 1992 until FY 1995 representation of males at the GS–12 level decreased from 56% to 46.5% and at the GS–13 level decreased from 64.8% to 59.8%, while representation of females increased from 44% to 53.5% and from 35.2% to 40.2% at those two levels, respectively. However, the AEP Tracking Report had also indicated that with respect to white male representation at the GS–13 to GS–15 levels, "[w]hite men were represented at levels well above their CLF [Civilian Labor Force] representation (54.9% versus a CLF of 42.6%). Their percent representation in the highest grades was over twice their percent representation in the SSA work force."

Plaintiff Michael H. Bostron is now 45 years of age. He was first hired by the SSA in 1972 as a student assistant at level GS–3. By July of 1978, he had been promoted to the GS–12 level. In August of 1981, Bostron was promoted to the GS–13 level as an Operations Research Analyst in the Office of Assessment. Subsequently, in January of 1994, Bostron was reassigned to the supervisory position of Supervisory Program Analyst at the GS–13 level. Thereafter, in June of 1995, he was reassigned to his current non-supervisory position at the GS–13 level of Management Analyst in the SSA's Office of the Deputy Commissioner for Finance, Assessment and Management.

Plaintiff Bostron alleges that he was named to the "Best Qualified List" for promotions 154 times but was rejected for each of these positions. From 1979 through 1997, Bostron received nineteen cash awards and one non-cash award. Most recently, in 1995, Bostron applied for but was denied promotion to a GS–14 position as Program Policy Officer in the Office of the Deputy Commissioner for Programs. He alleges that he has suffered discrimination on the basis of his sex, race and age during his employment at the SSA.

Plaintiff Maurice R. duBois is 61 years of age and was first employed by the SSA in 1967 as a GS–7 Health Insurance Analyst in the Bureau of Health Insurance. In 1973, he was promoted to the position of Supplemental Security Income Planning Specialist in the Bureau of Supplemental Security Income at level GS–13. Subsequently, in 1986, duBois was promoted to the position of Supervisory Social Insurance Specialist at level GM–13 in the SSA's Office of Assessment. In 1994, duBois was reassigned to his current, non-supervisory position of Social Insurance Specialist at level GS–13 in the SSA's Office of the Deputy Commissioner for Finance, Assessment and Management.

Plaintiff duBois claims that the SSA has denied numerous applications for promotion filed by him, despite the fact that he has occupied several supervisory positions during his tenure at the SSA. According to duBois, he has been denied these promotions as a result of age and sex discrimination and a discriminatory rating system under which female employees have received a disproportionate number of outstanding ratings.

Plaintiff John E. Boyer is 56 years of age. He was first employed by the SSA in 1973 as a Social Insurance Claims Examiner in the SSA's Bureau of Disability Insurance, Division of Initial Claims. In March of 1980, Boyer was promoted to the position of Social Insurance Specialist at level GS–12 in the Office of Operational Policy and Procedures. Since February of 1993, Boyer has served as a Program Analyst in the Data Management and Analysis Branch of the Disability Program Information and Studies Division in the Office of the Deputy Commissioner for Programs and Policy. Since 1980, Boyer has remained at the GS–12 level.

Plaintiff Boyer alleges that his performance rating has dropped dramatically from a nearly outstanding level to barely satisfactory. According to Boyer, defendant SSA has been giving a disproportionate number of outstanding ratings to female employees with an adverse impact upon his opportunities to obtain promotions. He alleges discrimination on the basis of his sex.

All three plaintiffs have filed both informal and formal class action complaints with the SSA's Office of Civil Rights and Equal Opportunity ("OCREO"). Following various administrative proceedings, the administra-

tive class action complaints of plaintiffs Bostron and duBois have now been dismissed by the SSA based on recommendations of the Equal Employment Opportunity Commission.[2] This civil action was instituted by the plaintiffs in this Court on September 16, 1997.

## II

### Plaintiffs' Claims and Requested Relief

In their complaint, plaintiffs have requested that this Court certify this suit as a class action under Rule 23 and appoint plaintiffs and their counsel to represent the class. Plaintiffs are here seeking injunctive relief including immediate promotions to GS–15, back pay, compensatory damages for emotional harm and attorneys' fees. The complaint contains two counts. Count I seeks a recovery for intentional employment discrimination based upon sex and race. In Count II, plaintiffs Bostron and duBois seek a recovery for unlawful retaliation subsequent to the filing by them of administrative civil rights complaints.[3]

Relying on *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995), plaintiffs contend that the overall AEP adopted by the SSA as well as the regional AEP's are unconstitutional.[4] In *Adarand,* the Supreme Court ruled that, to satisfy constitutional requirements, federal affirmative action programs employing racial classifications must serve a compelling governmental interest and must be narrowly tailored to further that interest. *Id.* at 235.

In their Proposed Class Certification Order,[5] plaintiffs ask that this suit be maintained as a class action on behalf of the following class of plaintiffs:

All White male employees of the Social Security Administration employed at the GS–12 and GS–13 levels as of the date of class certification who were not selected or promoted, or were otherwise subjected to disparate treatment in regard to performance appraisals, awards, bonuses and training as part of the SSA's alleged subjective personnel system, which discriminates against White males.

The Proposed Order states that the case should be maintained as a class action with respect to all causes of action and requests for equitable relief set forth in the complaint. The Order further seeks designation of the three plaintiffs as class representatives and of their attorneys as counsel for the class.

## III

### Applicable Principles

Rule 23(a) provides as follows:

(a) PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Under the Rule, certification of a class action requires that the action meet the requirements of a two-step test. *In re A.H. Robins Co., Inc.,* 880 F.2d 709, 727 (4th Cir.), *cert. denied,* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989). As a first step, the action must satisfy all *four* of the prerequisites mandated by subsection (a), namely (1)

---

2. The SSA has not as yet finally acted on the administrative class action complaint filed by plaintiff Boyer.

3. Although Paragraph 1 of the complaint indicates that suit has been brought under the ADEA and the Fifth Amendment, neither Count asserts such claims. Accordingly, the only claims before the Court are those alleged in Counts I and II under Title VII.

4. Relying on a report entitled "Evaluation of Social Security Administration Affirmative Act

Programs," the SSA claims that its AEP's do not violate *Adarand* and that they are in compliance with a Memorandum issued by the President in 1995 directing that all affirmative action programs in federal agencies creating a quota or reverse discrimination be eliminated.

5. Plaintiffs have attached to their motion for class certification a "Proposed Order Class Certification."

numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation (emphasis in original). *Id.* If the plaintiffs can meet these requirements, the next step demands that the action fit within at least one of the three categories of actions identified in subsection (b) of the Rule. *Id.* at 727–28.

In *Shelton v. Pargo, Inc.,* 582 F.2d 1298, 1312 (4th Cir.1978), the Fourth Circuit cautioned that a district court in resolving the issue of class certification "may not" confine itself to the allegations of the complaint. Specific findings are necessary based on a preliminary exploration of the merits. *Id.* at 1312–13. To aid in making such findings, discovery is to be encouraged. *Id.* at 1313. In *Shelton,* the Court noted that there is a sharp line of demarcation between an individual action seeking to become a class action and an actual class action. *Id.* at 1304.

■ In *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), the Supreme Court admonished that in a class action brought under Title VII, even considering the broad, remedial purposes of the statute, "careful attention to the requirements of Fed. Rule Civ. Proc. 23 remains nonetheless indispensable." *See also Stastny v. Southern Bell Tel. & Tel. Co.,* 628 F.2d 267, 273 (4th Cir.1980). More recently, the Supreme Court in *General Telephone Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) reiterated "that a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." The inquiry which the district court must make requires development of an adequate record and the burden of producing such a record "lies of course with the party who has the burden of establishing the propriety of class action

maintenance—the class representative." *Stastny,* 628 F.2d at 277.[6]

In this particular case, the Preliminary Scheduling Order entered by the Court permitted the parties to undertake discovery relating to the question whether plaintiffs' claims satisfied the requirements of Rule 23. Over a period of some three months, the parties engaged in discovery, including the taking of depositions, the serving of interrogatories and the production of documents. What the Court must here determine is whether plaintiffs have on this record met their burden of satisfying the requirements of Rule 23.

## IV

### *Discussion*

Following its review of the record established during the preliminary discovery period, this Court has concluded that plaintiffs have failed to meet their burden of showing that this case should proceed as a class action. Plaintiffs may go forward with their individual claims but they may not litigate this case as representatives of the class defined in their Proposed Order.[7]

■ Plaintiffs have asked the Court to certify a broadly-defined nationwide class of white male employees of the SSA at the GS–12 and GS–13 levels. Were such a class to be certified it would be a massive one, potentially including more than 5,100 white males.[8] Although all three plaintiffs are located at SSA headquarters in Woodlawn, Maryland, the class would include GS–12 and GS–13 employees in other states at ten regional offices and numerous field components. Plaintiffs propose that the class include not only GS–12 and GS–13 employees who were not selected or promoted but also all other

**6.** It is thus well settled in the Fourth Circuit that the proponent of class certification has the burden of establishing the right to such certification under Rule 23. *Doctor v. Seaboard Coast Line R.R. Co.,* 540 F.2d 699, 707 (4th Cir.1976); *Windham v. American Brands, Inc.,* 565 F.2d 59, 64 n. 6 (4th Cir.1977), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978).

**7.** In their memoranda, plaintiffs have identified three potential sub-classes. It is not necessary

for the Court to consider the composition of those suggested sub-classes since plaintiffs have failed to show that they are entitled to the overall class which they have asked the Court to certify in their Proposed Order.

**8.** As of September 30, 1995, there were 3,311 white males employed by SSA at the GS–12 level and 1,793 employed at the GS–13 level.

such employees who were subjected to discrimination in regard to performance appraisals, awards, bonuses and training as a part of the SSA's personnel system. In their reliance on an across-the-board approach to Title VII class certification, plaintiffs have here failed to satisfy the Rule 23 prerequisites of commonality and typicality.

The principal argument advanced by plaintiffs in seeking class certification is that all of the members of the proposed class have been subjected to race and sex discrimination and that by its very nature this action involves class-wide wrongs.[9] But this across-the-board approach has been rejected by the Supreme Court and the Fourth Circuit. In *Falcon*, the Supreme Court said:

> If one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII case would be a potential company wide class action. We find nothing in the statute to indicate that Congress intended to authorize such a wholesale expansion of class action litigation.

457 U.S. at 159, 102 S.Ct. 2364.

In *Stastny*, the Fourth Circuit held that the mere fact that racial . discrimination formed the basis for the plaintiffs' claims did not relieve the plaintiffs in that case of the obligations imposed by Rule 23 to prove "the specific fitness, on its own facts" of the Title VII case in question. 628 F.2d at 273. The commonality and typicality requirements of Rule 23(a) tend to merge. *Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. 2364. Since inquiries into the commonality of issues and the typicality of claims in a Title VII case are closely related, they may for convenience be referred to collectively as "the commonality criteria." *Stastny*, 628 F.2d at 273 n. 8.

In *Falcon*, the Supreme Court had before it a Title VII case in which the plaintiff claimed that his employer did not promote him because he was a Mexican–American. 457 U.S. at 149, 102 S.Ct. 2364. Plaintiff sought on behalf of similar Mexican–Americans certification of a class of persons who were then employed by the defendant or who

might be employed at its place of business in Irving, Texas. *Id.* at 150–51, 102 S.Ct. 2364. The Fifth Circuit had approved certification of the requested class based on an across-the-board rule. *Id.* at 153, 102 S.Ct. 2364. In reversing certification of the class on the ground that plaintiff had not met his burden of satisfying the commonality criteria, the Supreme Court said the following:

> We cannot disagree with the proposition underlying the across-the-board rule—that racial discrimination is by definition class discrimination. But the allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified. Conceptually, there. is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims. For respondent to bridge that gap, he must prove much more than the validity of his own claim. Even though evidence that he was passed over for promotion when several less deserving whites were advanced may support the conclusion that respondent was denied the promotion because of his national origin, such evidence would not necessarily justify the additional inferences (1) that this discriminatory treatment is typical of petitioner's promotion practices, (2) that petitioner's promotion practices are motivated by a policy of ethnic discrimination that pervades petitioner's Irving division, or (3) that this policy of ethnic discrimination is reflected in petitioner's other employment practices, such as hiring, in the same way it is manifested in the promotion practices. These additional inferences demonstrate the tenuous character of any presumption

9. At the hearing on their motion for class certification, plaintiffs specifically argued that their claims met the typicality requirement because all members of the class were subjected to discrimination based on the fact that they were white males. (Tr. at 16.)

that the class claims are "fairly encompassed" within respondent's claim.

*Id.* at 157–58, 102 S.Ct. 2364 (footnotes omitted).

In *Falcon*, the Supreme Court held that the plaintiffs were not entitled to certification of a class consisting both of employees who were not promoted because they were Mexican–Americans and also of applicants for employment who were not hired because they were Mexican–Americans. *Id.* at 158–59, 102 S.Ct. 2364. For similar reasons, plaintiffs in this case are not entitled to certification of a class consisting both of SSA employees at the GS–12 and GS–13 levels who were not promoted and also of such employees who were subjected to disparate treatment in regard to performance appraisals, awards, bonuses and training.

Likewise of controlling significance here is the well-reasoned and comprehensive opinion of Circuit Judge Phillips in *Stastny*. As in this case, *Stastny* was a suit brought under Title VII, in which claims of discriminatory denials of promotions to management positions had been asserted. 628 F.2d at 270. Plaintiffs there sought certification of a statewide class of employees who had been denied promotions. *Id.* There are striking similarities between *Stastny* and the case here pending before this Court.

In *Stastny*, the Fourth Circuit considered whether the district court had properly certified a broadly-defined class of female employees who were located in various different facilities in North Carolina of defendant Southern Bell Telephone and Telegraph Company ("Southern Bell"). *Id.* Plaintiffs relied in part on statistical evidence based on data drawn from all of Southern Bell's North Carolina facilities. *Id.* In reversing the district court's certification of a class, the Fourth Circuit determined that plaintiffs had not met their burden of satisfying the commonality criteria. *Id.* at 278. After reviewing the facts of record, the Court said:

Here, we conclude that the record finally laid before the court was deficient in critical ways that prevented any informed decision on certain of these crucial commonality questions. As a result, the commonality determinations implicit in the district court's certification could only have been made on the basis of speculation or larger leaps of inference than we think are permitted for Title VII cases under the teaching of *Rodriguez*.

*Id.*

The crucial deficiencies in the *Stastny* record which undercut the district court's certification of a statewide class were found by Circuit Judge Phillips to trace essentially to the district court's failure to appreciate the significance of the dispersion of Southern Bell's work force throughout a great number of geographically separated facilities in North Carolina. *Id.* Such dispersion made it unlikely that there was truly an employment pattern or practice, particularly one of intentionally disparate treatment, which sufficiently affected "in common" the class member employees in all the facilities. *Id.* Noting that the named plaintiffs were all located in defendants' Charlotte, North Carolina facility, the Court concluded that there was no showing in the record of the extent to which, if at all, the overall disparities were paralleled in the separate facilities or even in a statistically reliable sample of them. *Id.* at 278–79. The Court pointed out that there was no showing by direct evidence that a statewide practice or policy existed, either objectively or subjectively administered. *Id.* at 279. The Court went on to say the following:

Inattention to the significance of the multifacility dispersion of the putative class left the record essentially silent on two critical factors for class action determination: the locus of autonomy in making the challenged employment decisions, *see Harriss*, 74 F.R.D. at 41, and intertwined with this, whether the management positions in question were filled from an essentially statewide work force labor pool; essentially from the work-force of each separate facility or from some intermediate geographical or group-of-facility pools.

*Id.*

 Applying the principles of *Falcon* and *Stastny* here, this Court concludes that plaintiffs have not in this case satisfied their burden as to the commonality criteria of Rule

23.[10] Plaintiffs seek to represent a class not only of those GS–12 and GS–13 employees who were not selected or promoted, but also of those GS–12 and GS–13 employees who were otherwise subjected to disparate treatment in regard to performance appraisals, awards, bonuses and training as part of the SSA's personnel system. The inference which the Court is called upon to make here is of a "tenuous" character. *Falcon*, 457 U.S. at 158, 102 S.Ct. 2364. The conclusion that plaintiffs were denied promotions because of their race and sex would not justify the additional inferences that this policy of discrimination is reflected in each of petitioner's other challenged employment practices, such as the denial of appraisals, awards, bonuses and training. *See id.* Plaintiffs have here failed to make any "specific presentation" identifying the questions of law or fact common to the claims of plaintiffs and to those of the members of the class they seek to represent. *Id.* Class relief is appropriate only when the issues involved are common to the class as a whole. *Falcon*, 457 U.S. at 156, 102 S.Ct. 2364; *Califano v. Yamasaki*, 442 U.S. 682, 700–701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).

Furthermore, as in *Stastny,* there is in this case a wide dispersion of SSA's work force.[11] The evidence relied upon by plaintiffs does not give significance to the multi-facility dispersion of the proposed class. As in *Stastny,* the record here is essentially silent concerning the locus of autonomy in making the challenged employment decisions and also concerning whether the positions in question were filled from an essentially nationwide work force pool or from the work force of each separate facility. *See Stastny,* 628 F.2d at 279.

In the absence of evidence to the contrary, the record in this case supports defendants'

contention that there was a substantial amount of local autonomy in the SSA's regional offices and other components. The evidence relied upon by plaintiffs does not establish the existence of a nationwide policy or practice which controlled on a systematic basis the promotional and other challenged decisions made by regional and local supervisors. While evidence of subjectivity in employment decisions may well serve to bolster proof on the merits of individual claims of disparate treatment and may also bolster statistics of class-wide discrimination in the facility where the autonomy is exercised, "it cuts against any inference for class action commonality purposes that local facility practices were imposed or enforced [nationwide] with respect to a [nationwide] class." *Id.* Any finding by this Court that plaintiffs had satisfied commonality requirements could be made only "on the basis of speculation or larger leaps of inference" than permitted by the record here. *Id.* at 278.

All three plaintiffs are located at SSA headquarters in Woodlawn, Maryland. Each of them is employed at either the GS–12 or the GS–13 level in one of the Offices of the Deputy Commissioner. Whether or not a particular GS–12 or GS–13 employee in a particular SSA office outside Maryland was denied a promotion because of his sex or race would depend upon a myriad of different factors, including the applicant's previous work experience and his qualifications for the particular position as compared with those of competing applicants. In contending that their claims are typical of GS–12 and GS–13 employees in many other regional offices, plaintiffs overlook the fact that the demographics and the composition of the labor force in other areas of the country are certainly different from those to be found in Maryland. In the absence of proof to the

---

**10.** Another pertinent case in this Circuit is *Boley v. Principi,* 144 F.R.D. 305 (E.D.N.C.1992). Denial of certification by the district court in that case was based, *inter alia,* on the ground that the unique factual differences in the claims of the potential class members made it difficult for plaintiff to show that his claim was "typical" of the claims of class members. *Id.* at 308. On appeal, the Fourth Circuit affirmed this determination. *Boley v. Brown,* 10 F.3d 218, 223 (4th Cir.1993).

**11.** Indeed in *Stastny,* there were merely a number of geographically separated facilities in North Carolina, and certification of a state-wide class was sought. 628 F.2d at 270. Here, SSA facilities are dispersed across the country, and plaintiffs have asked that a nationwide class be certified.

contrary, the reasonable inference is "that there were in effect as many labor pools as there were separate and essentially autonomous facilities." *Stastny,* 628 F.2d at 279. Since the Supreme Court's decision in *Falcon,* courts have insisted on detailed affidavits and other evidence to determine if the individual claims share questions of law or fact with the class claims and if the individual claims are typical of those brought for the class. *Stambaugh v. Kansas Dep't. of Corrections,* 151 F.R.D. 664, 672 (D.Kan.1993); 5 Herbert B. Newberg, *Newberg on Class Actions* § 2413, at 24–52 to 24–54 (3d ed.1992). Plaintiffs have produced no affidavits from other GS–12 and GS–13 employees or other specific evidence of the existence of an aggrieved class. *See Sheehan v. Purolator, Inc.,* 103 F.R.D. 641, 648–649 (E.D.N.Y.1984), *aff'd,* 839 F.2d 99 (2d Cir.), *cert. denied,* 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988). The statistics relied upon by plaintiffs are not specific enough to allow this Court to discern the outline of a class that can properly be certified. *See Wagner v. Taylor,* 836 F.2d 578, 594 (D.C.Cir.1987). All that this Court has before it in support of plaintiffs' motion is "a combination of broad conclusory allegations of widespread discrimination and a jumble of numbers." *Id.* at 595.

Accordingly, this Court concludes on the record before it that plaintiffs have not met their burden under Rule 23(a)(2) of establishing that there are questions of law and fact common to the proposed class, nor have they met their burden under Rule 23(a)(3) of establishing that the claims asserted by them are typical of the claims of the class.[12]

### V

### *Conclusion*

For all the reasons stated, this Court has concluded that plaintiffs are not entitled to certification of this case as a class action under Rule 23. Accordingly, it is this 24th day of August, 1998 by the United States District Court for the District of Maryland,

ORDERED that plaintiffs' motion for class certification is hereby denied.

---

12. Because this Court has determined that plaintiffs have not met their burden as to the commonality and typicality requirements of Rule 23, it is not necessary to address defendants' other arguments that plaintiffs have not shown that the defined class is so numerous that joinder of all members is impracticable, that they have not shown that the representative parties will fairly and adequately protect the interests of the class and that they have not satisfied the requirements of Rule 23(b)(2) and Rule 23(b)(3).