Clarence ZACHERY, Frieda J. Woods, John Thomas, Jesse J. Riggins, William Rabb, Jr., James D. Hall, and Golden Murphy, III, Plaintiffs,

v.

TEXACO EXPLORATION
AND PRODUCTION,
INC., Defendant.

No. MO:98–CA–14–F.

United States District Court,
W.D. Texas,
Midland–Odessa Division.

March 18, 1999.

Tim Crowley, Richard Eugene Norman, Crowley & Douglas, Houston, TX, Britton D. Monts, Dallas, TX, David Hutchison Burrow, Burrow & Williams, Houston, TX, for plaintiffs.

Stephen F. Fink, Bryan P. Neal, David M. Pryor, Thompson & Knight, P.C., Dallas, TX, Joseph P. Moan, White Plains, NY, Michael G. McQueeney, Houston, TX, for defendant.

## AMENDED ORDER DENYING PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

FURGESON, District Judge.

Before the Court are the Plaintiffs' Amended Motion for Class Certification, filed

August 27, 1998; the Defendant's Response, filed September 4, 1998; the Plaintiffs' Supplemental Brief in Support, filed September 22, 1998; and the Defendant's Response to Plaintiffs' Supplemental Brief, filed September 28, 1998. The Court held a hearing on September 11, 1998, when it entertained the excellent arguments of counsel and admitted testimony from witnesses. After consideration of the briefs, the arguments of counsel, the evidence, and the applicable law, the Court is of the opinion that the Plaintiffs' Amended Motion for Class Certification should be DENIED.

## I. PROCEDURAL HISTORY

In May, 1997, five individual plaintiffs brought suit against Texaco, Inc., in the United States District Court for the Eastern District of Texas on behalf of themselves and other similarly situated employees, seeking declaratory and injunctive relief as well as compensatory and punitive damages. The Eastern District granted the Defendant's Motion for Transfer of Venue and the case was assigned to this Court on January 23, 1998.

On March 5, 1998, the Plaintiffs filed a Motion for Class Certification. On March 20, 1998, Defendant responded in opposition to a class certification. This Court set the motion for hearing on April 1, 1998. The Court granted the Plaintiffs' motion to reschedule the hearing for September 11, 1998. The Plaintiffs have since amended their complaint to reflect that the true Defendant is Texas Exploration & Production, Inc. (TEPI).

On August 28, 1998, in light of the recent Fifth Circuit decision in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir.1998), discussed in detail *infra*, the Plaintiffs amended their Motion for Class Certification and their Complaint to drop the claims for compensatory and exemplary damages. Defendant filed a Response in Opposition to the Plaintiffs' Amended Motion for Class Certification. After conducting a hearing on the matter, this Court ordered the parties to submit supplemental briefs on the issues. The Plaintiffs filed their Supplemental Brief in Support on September 22, 1998, and the Defendant filed its Response on September 28, 1998.

## II. FACTUAL BACKGROUND

### A. The Proposed Class

Plaintiffs propose a class which would include all African–American pay grade 98 (PG–98) hourly field workers employed at Texaco Exploration & Production, Inc. at any time from March 23, 1991 to the present who have held or who have tried to obtain a managerial, supervisory, or professional position or who have been, continue to be, or may be otherwise adversely affected by TEPI's allegedly racially discriminatory policies and practices. Specifically excluded are union members and others subject to a collective bargaining agreement.

Plaintiffs initially allege that they believed that they were being represented in another class action, *Roberts v. Texaco, Inc.*, Cause No. 94–Civ.2015, in the Southern District of New York, but that the settlement of that class action refined the original class to exclude the proposed class in the instant case.

Defendant contends that the Plaintiffs were never considered in the N.Y. class action, which addressed salaried employees only. Defendant further contends that the Plaintiffs are incorrect when they state that they were relying on the N.Y. action to represent them and do not understand why they were excluded from the class. Defendant specifically alleges that: (1) the Plaintiffs herein never contacted the salaried employees who were plaintiffs in the N.Y. case during nearly three years that the case was pending; (2) the Plaintiffs herein filed a motion for intervention which the N.Y. salaried employees themselves opposed; (3) the N.Y. Court made it clear, in denying the intervention, that the claims of the hourly employees were not at all similar and would be inappropriate. *Defs. Resp. to Pls. [1st] Mot. Class Act.*

Whether Plaintiffs were relying on this other class action is relevant only to the extent that it impacts on the tolling, if any, of the statute of limitations for subsequent law-

suits such as this one, as discussed in more detail *infra.*

## B. Plaintiffs' Amended Motion for Class Certification—Plaintiffs' Allegations

In the motion currently before the Court, the Plaintiffs state a class-wide claim for both disparate impact and disparate treatment. Plaintiffs allege that TEPI has engaged in a pattern and practice of intentional racial discrimination (disparate treatment) by denying (1) promotions and opportunities for promotion, (2) comparable wages and raises, and (3) training opportunities on the basis of race. Plaintiffs further allege that TEPI's company-wide facially-neutral employment practices result in disparate impact. These practices include TEPI's (1) job evaluation systems, (2) job posting system, and (3) compensation system. Plaintiffs raise these claims under both Title VII, 42 U.S.C. § 2000e *et seq.,* and Section 1981 of the Civil Rights Act. 42 U.S.C. § 1981.

Plaintiffs attack the job evaluation system by alleging that it is too subjective and does not provide for any meaningful method of appealing an unfair rating. Plaintiffs attack the promotion system because it lacks sufficient written guidance, changes frequently, and is arbitrarily used as a pretext for denying promotion to qualified workers on the basis of race. Plaintiffs allege that TEPI does not maintain an objective system of evaluating and promoting employees, fails to use criteria relevant and necessary to job performance as a method of selecting workers for promotion, and fails to promote minorities to managerial, supervisory or professional jobs. Plaintiffs further allege that TEPI denies training necessary for advancement, relegates minorities to less visible jobs with lower prospects for advancement, and denies high-profile work in an effort to handicap the ability to acquire professional contacts and develop necessary skills.

Plaintiffs seek declaratory, injunctive and other equitable relief in the form of back pay. Despite their continued advancement of both a pattern and practice (disparate treatment) and a Section 1981 claim, the Plaintiffs nevertheless do not seek compensatory or punitive damages.

## C. Evidentiary Hearing— Findings of Fact

The Court entertained a number of witnesses at the evidentiary hearing on September 11, 1998. The Court makes the following Findings of Fact from the evidence presented:

1. Six of the seven named Plaintiffs began their work as roustabouts; Plaintiff Golden Murphy began as a lease operator.

2. Six of the seven named Plaintiffs received promotions to pumper; Plaintiff Golden Murphy was promoted to lease operator II.

3. Five of the seven named Plaintiffs are (or were at retirement) PG–98 hourly workers; Plaintiff Frieda Woods has been a salaried non-exempt employee since 1995, and Plaintiff Jesse Riggins is a PG–10 employee.

4. Three of the seven named Plaintiffs work in the Midland–Odessa area; two work in Kilgore, Texas; and two work in New Mexico.

5. From 1991 to 1994, TEPI operated in 15 states, subdivided into 2 regions and a gas department. The two regions were further subdivided into 5 divisions.

6. From 1995 to 1997, TEPI was divided into 4 divisions without any regions.

7. TEPI currently operates in two regions, TNAP–E and TNAP–W. Texas falls into both of these regions.

8. TEPI has always maintained numerous separate business units within the regions and divisions. Currently TEPI has 17 separate business units.

9. TEPI employs 1862 PG–98 workers, 225(12%) of whom are black and 1387 (74.5%) of whom are white.

10. TEPI employs 513 supervisors, 23 (4.5%) of whom are black and 453 (88.3%) of whom are white.

11. Currently, first line supervisors are partially responsible for filling vacancies and promotions.

12. Currently, first line supervisors have primary responsibility for evaluating hourly field workers.

13. The other personnel involved in these personnel decisions varies from one business unit to another. Generally, the next level supervisor is involved with human resource managers providing oversight.

14. Currently, some TEPI business units utilize teams to fill vacancies.

15. TEPI's overall policy for filling field worker vacancies and evaluating field workers is one of local control with bypass and oversight procedures to ensure conformity with appropriate policies.

16. Since 1994, TEPI has evaluated PG–98 employees in writing. Until 1998, each of the local business units, divisions, or regions were free to develop their own format for these evaluations.

17. TEPI maintains several company-wide procedures for filing complaints. These include the most recently enacted program, Solutions, which provides for arbitration binding upon TEPI but not upon the complainant.

18. In 1998, TEPI instituted a company-wide standardized promotion system with a checklist for evaluations and a Performance Development review (PDR) process. The PDR process involves various levels of review and appeal.

## III. ANALYSIS

### A. Title VII Claims

#### 1. Disparate Impact—Unintentional Discrimination

Title VII prohibits facially neutral policies which have a racially disparate impact whether or not there exists any racial animus. *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1523 (5th Cir.1993); *see also, Griggs v. Duke Power Co.*, 401 U.S. 424, 430–31, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). In a disparate impact case, the plaintiff must demonstrate that the "respondent uses a particular employment practice that causes a disparate impact on the basis of race ... and the respondent [must fail] to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e–2(k)(1)(A)(i). The plaintiff bears the initial

burden of demonstrating a disparate impact, and the burden then shifts to the employer to demonstrate the otherwise neutral policy was justified by business necessity. *Frazier*, 980 F.2d at 1525–26. Despite this shift of burden to the employer, the employee retains the ultimate burden of persuasion. *Id.* at 1525 n. 34.

#### 2. Disparate Treatment—Pattern & Practice of Intentional Discrimination

An allegation of disparate treatment requires proof of racial animus. *Id.* at 1526. An employee alleging disparate treatment initially bears the burden to present a prima facie case of discrimination. *Id.* The employee achieves this by demonstrating that he applied for a job or promotion for which he was qualified, and was rejected "under circumstances which give rise to an inference of unlawful discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also, Frazier*, 980 F.2d at 1526. If successful, the presumption is that the employer discriminated. *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. The employer must then rebut this presumption by proffering a legitimate, nondiscriminatory reason for the business decision. *Id.* at 254–55, 101 S.Ct. 1089. The reason must be sufficient to raise a "genuine issue of fact." *Id.* at 254, 101 S.Ct. 1089. The employee then bears the ultimate burden of persuasion. *Id.* at 256, 101 S.Ct. 1089. The discriminatory act must be one motivated by racial animus; a "good old boy" network does not necessarily violate Title VII. *Foster v. Dalton*, 71 F.3d 52, 57 (1st Cir.1995) (cronyism, no matter how offensive, did not violate Title VII because no racial animus was involved).

### B. Section 1981 Claim

Section 1981 provides equal contract rights under the law and prevents actions to interfere with these rights on the basis of race. 42 U.S.C. § 1981. The courts have construed Section 1981 to include a remedy for employment discrimination on the basis of race. *Adams v. McDougal*, 695 F.2d 104, 108 (5th Cir.1983). An action un-

der Section 1981 requires proof of discriminatory intent. *General Building Contractors Assoc., Inc. v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982).

### C. Class Actions Under Title VII and Section 1981

Class actions have often been utilized as a vehicle to correct widespread discrimination. *E.g., Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 409 (5th Cir.1998). Disparate impact claims, which "challenge specific facially-neutral policies with proof of statistical disparities resulting from their uniform application . . ., by their very nature implicate class-based claims." *Id.* at 409. In the past, courts have allowed class actions to address pattern and practice (disparate impact) claims. *Id.* Courts handled these cases in separate proceedings in which the plaintiffs bore different burdens of proof. *Id.* In the liability phase, the plaintiffs had the burden of proving a pattern and practice of class-based discrimination. *Id.* If successful, there arose a presumption of the availability of back pay, the amount of which was determined at the second proceeding. *Id.* At this stage, the plaintiffs had to prove only "that they were denied employment opportunities and the extent of their loss." *Id.* The burden then shifted to the employer "to demonstrate that those class members were denied employment opportunities for legitimate reasons." *Id.* This typically involved separate hearings for each individual class member, but was often accomplished by a special master. *Id.* The 1991 amendments to the Civil Rights Act changed this landscape by providing for the recovery of compensatory and punitive damages in cases of intentional discrimination. *Id.* at 409–410; 42 U.S.C. § 1981a(a)(1). Additionally, where a plaintiff now seeks compensatory or punitive damages, any party may demand a jury trial. *Allison,* 151 F.3d at 410; 42 U.S.C. § 1981a(c). As the Fifth Circuit noted, "[b]y injecting jury trials into the Title VII mix, the 1991 Act introduced, in the context of class actions, potential manageability problems." *Allison,* 151 F.3d at 410.

 To summarize, in a Title VII disparate impact case, the employee may seek only equitable relief, to include back pay; no damages are permitted. 42 U.S.C. § 2000e–5(g); 42 U.S.C. § 1981a(a)(1). As a result, no jury trial is mandated and class actions under Rule 23(b)(2) are generally appropriate if the other prerequisites of Rule 23 have been met. *See Allison,* 151 F.3d at 411. In disparate treatment cases, the employee is entitled to monetary damages and either party may demand a trial by jury. 42 U.S.C. § 1981a(c). As a result, class actions may no longer be a valid vehicle for this type of claim; where monetary damage claims predominate, the class action is inappropriate. *Allison,* 151 F.3d at 411.

### D. Federal Rule of Civil Procedure 23(a) Prerequisites

 The Court must vigorously analyze the requirements of Rule 23 before certifying a class. *Castano v. American Tobacco Co.,* 84 F.3d 734, 740 (5th Cir.1996), citing *General Tel. Co. of the S.W. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The Court has broad discretion but must follow Rule 23 in making its decision. *Castano,* 84 F.3d at 740. The party seeking class certification has the burden of proof. *Id.* To make the decision to certify, the Court must consider the substantive law that will govern the outcome of the trial. *Alabama v. Blue Bird Body Co., Inc.,* 573 F.2d 309, 316 (5th Cir.1978). While the Court does not consider the merits of the Plaintiffs' claims, *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the Court may look past the pleadings to the record and any completed discovery to make the certification decision. *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364; *Castano,* 84 F.3d at 744; MANUAL FOR COMPLEX LITIGATION § 30.11 (3rd ed.1995). In the past, the Fifth Circuit has routinely allowed class certification in Title VII lawsuits alleging disparate impact. *Allison,* 151 F.3d at 409. But the Supreme Court has cautioned against *automatic* certification in Title VII case in favor of strict adherence to Rule 23. *See Falcon,* 457 U.S. at 157–58, 102 S.Ct. 2364.

Rule 23(a) sets forth four prerequisites to maintaining a class action. All four requirements must be met. These four re-

quirements are: (1) The class must be so numerous as to make joinder impracticable (numerosity); (2) questions of law or fact common to the class must exist (commonality); (3) the claims of the representatives must be typical of those of the class members (typicality); and, (4) the representatives must fairly and adequately represent the class (adequacy of representation). Fed.R.Civ.P. 23(a).

### 1. Numerosity

■ Plaintiffs estimate that there are approximately 200 members of the proposed class spread across a wide geographic area and that joinder is impracticable. Plaintiffs support this with affidavits from members of the proposed class, and TEPI does not contest the Plaintiffs' satisfaction of Rule 23(a)(1). The Court finds that the Plaintiffs have met their burden with respect to numerosity.

### 2. Commonality

■ The commonality requirement is met "when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. County of El Paso, Texas,* 118 F.3d 421, 426 (5th Cir.1997); *but see, Applewhite v. Reichhold Chemicals, Inc.,* 67 F.3d 571, 573 (5th Cir.1995) ("class certification requires at least *two* issues in common.") *Id.* The "allegations of similar discriminatory practices generally meet the commonality requirement," *Lightbourn,* 118 F.3d at 426, and "[t]he interests and claims of the various plaintiffs need not be identical." *Forbush v. J.C. Penney Co., Inc.,* 994 F.2d 1101, 1106 (5th Cir.1993). But if broad discrimination is the *only* common denominator in the class, this does not satisfy the commonality requirement. *Wheeler v. City of Columbus, Mississippi,* 703 F.2d 853, 855 (5th Cir.1983) (per curiam). The class representative alleging class-wide racial discrimination must specifically enumerate the questions of law or fact common to the class. *Falcon,* 457 U.S. at 158, 102 S.Ct. 2364. Finally, the Court notes an important distinction between the 23(a) commonality requirements for a 23(b)(2) class and those for a 23(b)(3) class.

While both actions must meet the Rule 23(a) commonality prerequisite, a 23(b)(3) action requires that the common issues predominate; this is not the case in an action sought under Rule 23(b)(2) where no monetary damages are available. *Forbush,* 994 F.2d at 1105.

■ Plaintiffs allege that the Defendant's system of total decentralization of the performance evaluation and promotion systems to the lowest level supervisor is the common denominator that has yielded discriminatory results. In other words, it is precisely because TEPI has no central evaluation or promotion system that African–American hourly employees cannot obtain good evaluations and are then denied promotions by lower-level supervisors. Plaintiffs also argue that the type of relief sought, injunctive and declaratory, lends itself to a more generalized proof of an ·overall discriminatory impact.

Defendants urge that the putative class members hold a wide variety of different jobs at widely dispersed locations under different management; that the putative class members were subject to numerous different evaluation and promotion systems depending on which local business unit controlled them during much of the proposed class period; and that examining the allegedly discriminatory practices will thus require a distinct analysis of each individual's claim in light of that individual's particular evaluation system. In other words, the decentralization of the process to the lowest level supervisors has led to a number of different systems within TEPI's local business units for evaluating and promoting employees, and the sheer number of systems destroys the commonality of the class and would require individualized proof for each of these various local business units.

■ The fact that promotion decisions are handled by one's immediate supervisor based on subjective criteria would be useful evidence in an *individual* disparate *treatment* claim, but works against *class certification* of a disparate *impact* claim when the proposed class is subject to the same local autonomy in geographically dispersed facilities. *See Stastny v. So. Bell Tel. & Tel. Co.,*

628 F.2d 267, 279 (4th Cir.1980). Geographically widespread facilities make it more difficult to prove a pattern and practice of disparate treatment. *See id.* at 278. Because disparate treatment claims are by their nature individual, the class treatment of these claims requires close scrutiny of the proposed class and claims. *Abrams v. Kelsey–Seybold Medical Group, Inc.,* 178 F.R.D. 116, 129 (S.D.Tex.1997). Plaintiffs "must show a company-wide policy or practice, beyond individualized claims of discrimination." *Id.* Although discriminations is by its very nature a class claim, allegations of across the board discrimination do not by themselves meet the requirements of Rule 23. *Bostron v. Apfel,* 182 F.R.D. 188, 192–94 (D.Md.1998) (citing *Falcon,* 457 U.S. at 157–58, 102 S.Ct. 2364). A class of a large number of plaintiffs spread across a number of geographically widespread facilities is difficult to maintain, particularly when the decisions challenged are subject to local control. *See Bostron,* 182 F.R.D. at 194–95. One district court has implied that allegations of a policy of local autonomy that unintentionally facilitates discrimination at the local level is "too speculative," particularly when the allegations are based on raw statistical disparities between the percentages of minority workers and managers. *See McCree v. Sam's Club,* 159 F.R.D. 572, 577 (M.D.Ala.1995) (denying class certification on other grounds); *see also, Zapata v. IBP, Inc.,* 167 F.R.D. 147, 158–59 (D.Kan.1996) ("[P]laintiffs have failed to demonstrate that [defendant] had in place a specific, company-wide policy fostering [discrimination.]") *Id.* at 159.

Plaintiffs counter with citation to *Morgan v. United Parcel Service of America, Inc.* 169 F.R.D. 349 (E.D.Mo.1996). In *Morgan,* the defendant argued unsuccessfully that the decentralized nature of the promotion system made class certification inappropriate. *Id.* at 356. The facts in *Morgan* are distinguishable. United Parcel Service (UPS) was subdivided into successively smaller units as follows: eleven regions headed by regional managers; six districts headed by district managers; a varying number of divisions headed by division managers; a varying number of package operating divisions headed by package operating division managers; and a varying number of package operating centers headed by package operating center managers. *Id.* at 353–354. Below package operating center managers were the entry-level managers called "supervisors." *Id.* at 354. The plaintiffs in *Morgan* held positions as managers of the package operating centers, not lower level supervisor positions like those sought by the Plaintiffs in this case. *Id.* Unlike TEPI's widely varying system of performance evaluation, UPS evaluated all personnel in the same manner nationwide. *Id.* The decision to promote anyone to a package operation center manager position in UPS was made at the district level, a level far more centralized than is the case here with TEPI. *Id.* Although the district court found that the centralized policy of decentralized decision making was common of the proposed class, the decentralized decisions were made at the relatively high district level. *Id.* at 356. By contrast, TEPI, until recently, relegated the decisions affecting the Plaintiffs in this case to the lowest level supervisor in most, if not all, of its seventeen business units.

In this case, the proposed class is spread across fifteen states in seventeen separate business units, each of which, until 1998, had varying degrees of autonomy over evaluation and promotion decisions. These decisions, by the Plaintiffs' own complaint, were often made by the lowest level supervisor based on subjective criteria. While this would be useful evidence in an individual's claim of intentional discrimination by that supervisor, it does not lend itself readily to class treatment where there are 523 autonomous supervisors in locations spread across the United States. Delving into the practices of each local business unit and conceivably even into the individual decisions is precisely the type of individualized inquiry that class actions were designed to avoid. The Court finds it difficult not to foresee the possibility that this action would degenerate into multiple individual determinations for each individual proposed class representative, whose claims may or may not be common to those of the proposed class. The proposed class members themselves come from two different states, one of which is split into two major subdivisions within TEPI. Yet class

representatives seek to represent PG–98 employees from several other states, many of whom are within entirely separate local business units which maintained entirely separate (and often different) systems of evaluation and promotion. While Plaintiffs have significantly raised the Court's suspicion of the merits of their individual claim, it is not the potential merit of the Plaintiffs' claim that is at issue. Under the circumstances, Plaintiffs have failed to persuade the Court of the commonality of the proposed class.

### 3. Typicality

▮▮▮▮ The commonality and typicality requirements for a class have a tendency to merge. *Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364. To satisfy the typicality requirement, representatives must have the same interests and have suffered the same injuries as members of the proposed class. *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). Where unique defenses against a named plaintiff exist, the Court must consider the potential danger that the attention to this individual defense might harm the class. *Zenith Laboratories, Inc. v. Carter–Wallace, Inc.,* 530 F.2d 508, 512 (3rd Cir.1976).

▮▮▮ Plaintiffs contend that they are typical representatives of the proposed class because they have suffered under the same discriminatory system and have the same interest in seeing the decentralized and subjective system replaced.

TEPI raises two issues with respect to typicality. First, TEPI contends that unique defenses exist as to certain class representatives' claims and that this presents a danger for the proposed class. TEPI points to the fact that Plaintiff Woods admits to a safety violation in the pleadings.[1] TEPI uses this to contend that, for this particular representative only, it will have available to it the defense that Woods was not promoted because of this particular incident. TEPI also raises Plaintiff Zachery's college education as atypical of the class. In an action for wrongful denial of promotion. Plaintiff Zachery

might have a more valid claim as his educational level might make him a superior candidate for promotion in comparison to other members of the class.

Second, TEPI contends that the proposed class defines members as those hourly employees who wanted a promotion to a salaried position. TEPI contends that this will require a review of the subjective desires of each of the class members.

As with the commonality issue, it is foreseeable that TEPI would raise specific evidence applicable only to each proposed class representative as to why he or she was not promoted or better trained. These reasons will be, by their very nature, individually tailored and thus not "typical" for all class members. Assuming that TEPI is successful in some of these defenses and that the Plaintiffs do not prove them pretextual, then the proposed class, which might nevertheless have valid claims, might be prejudiced. To the extent that the Plaintiffs allege intentional discrimination, the Plaintiffs do have problems meeting the typicality requirement. TEPI might have genuine defenses to some Plaintiffs that are not applicable to unnamed class members.

▮▮▮ In respect to the allegations of disparate impact, the Court is aware that the purpose of disparate impact law is to shift the burden to the employer where a facially-neutral policy is proven to have a significant disparate impact on minorities. The Plaintiffs do not have to prove and the employer does not have to be guilty of racial animus. The Court is not, however, addressing the merits of an individual or class disparate impact claim at this time; rather, it is evaluating the Plaintiffs' motion for class certification. Although the Plaintiffs have raised the Court's suspicions considerably, mere suspicion that the problems faced by the named Plaintiffs might be typical of the proposed class is not enough. The Plaintiffs have failed to carry their burden of demonstrating the typicality of the class's claims.

---

**1.** Plaintiff contends the reprimand for an alleged safety violation is simply more proof of the racial animus of the Defendant.

### 4. Adequacy of Representation

■ This Rule 23(a) prerequisite requires that the class have qualified attorneys to maintain the suit and that the named plaintiffs' interests not be antagonistic to the class members. *See Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Horton v. Goose Creek I.S.D.,* 690 F.2d 470, 484–85 (5th Cir.1982).

Plaintiffs' counsel points to its impressive experience in handling complex litigation to include numerous class actions. Understandably, TEPI does not challenge the opposing counsel's credentials, and makes no allegation that the class counsel is unqualified to handle this litigation with acumen. Indeed, the Court is familiar with the reputations of the attorneys representing Plaintiffs, and those reputations are stellar in every way.

Plaintiffs contend that the representatives and the proposed class members have all faced the same discriminatory practices and are thus not antagonistic to each other's interest. TEPI alleges that the named plaintiffs have numerous conflicts with the proposed class and that the Plaintiffs fail to satisfy the adequacy requirement.

#### a. Promotion Conflicts

An expansive class definition can result in a situation where class members denied promotions on the basis of race may have competed with each other for the same position. *Allen v. City of Chicago,* 828 F.Supp. 543, 553 (N.D.Ill.1993). In such a situation, conflict can arise when the class members each seek injunctive relief to place them in the same position. *Id.* Additionally, the individual and personal nature of promotion claims can result in class representatives placing more emphasis on defending their own personal treatment at the expense of their fellow class members. *Id.* at 553–54.

Although the Plaintiffs included in their prayer a request for general relief, they have not sought to be placed into positions which they contend TEPI wrongly denied them. This would be within the Court's power if the Court were to determine that the Plaintiffs' promotion allegations are true. Still, one of

Plaintiffs' chief complaints is that they have been denied promotion on the basis of race. It is thus conceivable that this could present a conflict at the remedies stage of litigation should TEPI be found liable for discrimination. However, this potential conflict probably exists in most employment discrimination class action, and the Court is unwilling to rely solely upon it in refusing to certify a class.

#### b. Managers and Hourly Employees in Same Class

TEPI also complains of the inclusion of both managerial and hourly employees in the proposed class definition. It is true that some courts have found that supervisory personnel make poor representatives of employees in class actions. *E.g., Wagner v. Taylor,* 836 F.2d 578, 595 (D.C.Cir.1987); *Appleton v. Deloitte & Touche, L.L.P.,* 168 F.R.D. 221, 233 (M.D.Tenn.1996). The potential conflict is greatest when one class member has, as supervisor, evaluated another class member who now challenges the evaluation system. TEPI contends that such a conflict exists in this case because the proposed class includes all PG–98 workers who have held or sought managerial or supervisory positions. It appears that two of the proposed class representatives have held or currently hold supervisory positions (and indeed are not or were not PG–98 employees). The potential for conflict, however, seems somewhat limited under the circumstances. The majority of proposed class members who spoke at the evidentiary hearing have been promoted once to a non-supervisory PG–98 position and have then held this same position for their entire career. If this failure to advance is attributable to inappropriate employment practices, it is unlikely that the few class members who have been further promoted would present an overwhelming conflict. The Court is unwilling to rely solely on this issue in refusing to certify a class.

#### c. Statutes of Limitation

TEPI alleges that the varying state statutes of limitation with respect to the Section 1981 claims lead to a conflict between proposed class members from different states.

By bringing this suit in Texas, the Plaintiffs have chosen a state which applies a two year statute of limitations to Section 1981 actions. *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir.1988). Plaintiffs in other states have a longer available statute of limitation. *E.g., Kozam v. Emerson Elec. Co.*, 711 F.Supp. 313, 316 (N.D.Miss.1989) (six year statute).

Plaintiffs' proposed class purports to start in 1991 and would render the issue moot were it not for the Defendant's vigorous attack on the Plaintiffs' proposed class dates. Plaintiffs contend the March 1991 date is correct because the statute is tolled during the pendency of the earlier *Roberts* class action. Defendant contends that the period is tolled only for individual lawsuits and not for subsequent class actions like the one sought here.

 If class certification is denied, the period of time between commencement of the proposed class action and the denial is tolled for all putative class members and any subsequent individual lawsuits they may wish to bring. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552–53, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Several circuits have limited this decision with a "no piggyback rule" which restricts the tolling to subsequent individual lawsuits and not further class actions. *E.g., Basch v. Ground Round, Inc.*, 139 F.3d 6, 10–11 (1st Cir.1998); *Griffin v. Singletary*, 17 F.3d 356, 359–60 (11th Cir. 1994); *Andrews v. Orr*, 851 F.2d 146, 149–50 (6th Cir.1988); *Korwek v. Hunt*, 827 F.2d 874, 879 (2nd Cir.1987); *Robbin v. Fluor Corp.*, 835 F.2d 213, 214 (9th Cir.1987); *Salazar–Calderon v. Presidio Valley Farmers Assoc.*, 765 F.2d 1334, 1351 (5th Cir.1985).

Plaintiffs argue that these cases are distinguishable. Despite the strict language of these decisions, the Plaintiffs' argument is not without significant merit. Plaintiffs' proposed class ·was arguably contained in the initial proposed *Roberts* class, which was certified and received a settlement. Plaintiffs here, unlike many of the plaintiffs in the cited cases, are not simply bringing multiple class actions in scattered districts in an attempt to find one district willing to accept their class certification argument. *See generally, In re Crazy Eddie Securities Litigation*, 802 F.Supp. 804, 813 (E.D.N.Y.1992). Plaintiffs allege that they relied on the *Roberts* case to protect their interests and only when it became apparent that they would be excluded did they bring this lawsuit. This reliance may have been misplaced, as the plaintiffs in *Roberts* appear to have proposed a class as early as May of 1995 that clearly excluded the Plaintiffs in this case. Because the Court denies the class certification on other grounds, however, the Court need not decide the issue at this time. The individual Plaintiffs in this case can rely on the *American Pipe* tolling rule for their individual lawsuit. The Court does not rule on whether this makes the individual lawsuit timely; that issue is not presented to the Court.

### d. Solutions Program Conflict

TEPI further contends that the availability of its new *Solutions* program, by which an aggrieved party may seek arbitration binding upon TEPI but not upon the employee, might present a conflict between class members. TEPI argues that some class members might wish to pursue the *Solutions* solution before bringing suit. This is a minor conflict that would not by itself destroy the ability of the class to be certified. Furthermore, use of the *Solutions* program takes time and might impair an employee's rights given the relatively short statutes of limitation for Title VII actions. The Court is not willing to find this conflict by itself destroys the ability to maintain a class.

### e. Decision to Omit Monetary Claims

 TEPI next attacks the Plaintiffs' decision to drop the claims for compensatory and punitive damages in order to have a chance at certifying a class. TEPI contends that many class members may wish to seek these damages individually and, because there is no clear opt-out provision for a 23(b)(2) class action, such class members would be barred by this class action from doing so. Plaintiffs contend that the class members can bring subsequent individual suits for disparate treatment and recover compensatory and punitive damages separate from the class claims. Defendants argue

that this would violate the Seventh Amendment and is unauthorized remedy-splitting. Both parties cite *Cooper v. Federal Reserve Bank of Richmond* in support of this position. 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984).

In *Cooper*, the plaintiff class claimed a pattern and practice of racially disparate treatment. *Id.* at 869–70, 104 S.Ct. 2794. At trial, the court found that the defendants had engaged in a pattern and practice of discrimination with respect to pay grade 4 and 5 employees, but that there was insufficient proof to sustain such a finding for other class members. *Id.* at 871–872, 104 S.Ct. 2794. The class members who were denied relief brought an individual suit against the defendant and alleged individual acts of intentional discrimination. *Id.* at 872, 104 S.Ct. 2794. The defendants moved for dismissal on the basis of res judicata. *Id.* at 872–873, 104 S.Ct. 2794. The Supreme Court determined that res judicata did not apply to bar the subsequent individual lawsuits under the circumstances. *Id.* at 873–878, 104 S.Ct. 2794. The Court reasoned that failure to prove class wide disparate treatment did not preclude an individual plaintiff from proving individual acts of intentional discrimination. *Id.* at 878, 104 S.Ct. 2794 ("It could not be more plain that the rejection of a claim of class wide discrimination does not warrant the conclusion that no member of the class could have a valid individual claim.") *Id.; see also, Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 579, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

The facts in this case are distinguishable from *Cooper*. First, *Cooper* was decided before the 1991 Civil Rights Act amendments which allow for jury trials in disparate treatment claims seeking compensatory and punitive damages. In *Cooper*, the class failed to prevail on its class-wide claims of intentional discrimination (disparate treatment). The Court found that this did not bar subsequent litigation by the individuals. *Cooper*, 467 U.S. at 880, 104 S.Ct. 2794. The Court is not concerned with what would happen if the class in this case is certified and *fails to prevail* on its class action for disparate treatment. Under *Cooper*, the class members

could then bring individual suits for discrimination. What concerns the Court is the effect of a decision, if a class is certified, in which the class proposed here *prevails*. The Plaintiffs have dropped their claim for monetary damages, but have not dropped their claim for class-wide disparate treatment. If a Court certifies a class in this case and the class prevails on this issue, no one will receive compensatory or punitive damages because the seven Plaintiffs have unilaterally chosen not to seek them. Whether this bars the other class members from later seeking compensatory damages is an issue that greatly concerns the Court.

The Court notes initially that it cannot conclusively determine the res judicata effect of a decision yet to be handed down by this Court. That decision is for the forum presented the issue if and when it arises. The Court believes that it can, however, assess the risk of such a determination and weigh it in the consideration of the certification of a class.

It is a very real possibility, if not a probability, that another court of competent jurisdiction could determine that the proposed class members would be barred from bringing individual actions for damages arising from intentional acts of discrimination if the class obtained a finding of intentional discrimination in this Court. As a general rule, the decision in a class action is binding on the parties in subsequent decisions. *Cooper*, 467 U.S. at 874, 104 S.Ct. 2794. "Basic principles of res judicata (merger and bar or claim preclusion) and collateral estoppel (issue preclusion) apply. A judgment in favor of the plaintiff class extinguishes their claim, which merges into the judgment granting relief." *Id.* The determination of "the existence of a discriminatory pattern or practice establishe[s] a presumption that the individual class members ha[ve] been discriminated against." *Id.* at 875, 104 S.Ct. 2794 (citing *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 772, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976)). A finding of class wide discrimination justifies relief to the entire class. *Cooper*, 467 U.S. at 876, 104 S.Ct. 2794.

If the Plaintiffs here prevail on their pattern and practice lawsuit, the Court cannot

award compensatory relief in that suit. The Plaintiff have chosen not to seek it. The Fifth Circuit does not allow it per *Allison's* ban on 23(b)(3) discrimination class actions for damages and on "prevailing." relief in a 23(b)(2) action. And the preclusive effect of the class action would seem to pose a very real danger that the individual class members could not then seek these damages in another lawsuit. This danger would be greatly lessened if there were a clear cut opt-out provision for the class in a 23(b)(2) class action such as is sought here.

The Supreme Court almost addressed the issue of res judicata and the availability of opt-out in a class action certified under Rule 23(b)(2). *Ticor Title Ins. Co. v. Brown,* 511 U.S. 117, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994) (per curiam) (6–3 decision). Unfortunately, the Court chose at the last minute not to address the issue on which it had granted *certiorari*. *Ticor* was the second in a set of lawsuits arising from the same circumstances. In the first set of litigation, the Federal Trade Commission and twelve sets of plaintiffs filed suits against the defendant title companies for conspiring to fix prices. 511 U.S. at 118, 114 S.Ct. 1359. The cases were consolidated into a multi-district litigation. *Id.* When a tentative settlement was reached, the district court proposed to certify a class to settle all claims. *Id.* The state of Wisconsin·objected on the grounds that Rule 23(b)(2) was improper for class claims for money damages and that certification under 23(b)(2) violated the class's right to due process by not allowing opt-out procedures in cases where monetary claims prevailed. *Id.* at 119, 114 S.Ct. 1359. The court overruled the objection, certified the class, and settled the lawsuit. *Id.* The *Ticor* suit arose when the plaintiffs, members of the class in the previous multi-district litigation, brought a suit for damages for the same reasons put forth in the earlier suit against the same defendants. *Id.* at 120, 114 S.Ct. 1359. The district court dismissed the action based on the earlier litigation and its preclusive effect. *Id.* The Ninth Circuit reversed after finding that the earlier litigation had violated the plaintiffs' due process rights by not allowing an opt-out procedure. *Id.* The Supreme Court framed the issue as whether a court

may refuse to enforce a prior federal class action on the grounds that the class members had a due process right to opt out of a claim for monetary damages. *Id.* at 120–121, 114 S.Ct. 1359. The Supreme Court then reasoned that the issue would not be important if Rule 23(b)(2) contained an opt-out procedure. *Id.* at 121, 114 S.Ct. 1359. This, the Court also reasoned, had already been decided in the prior litigation when the district court overruled Wisconsin's objections that 23(b)(2) did not contain an opt-out procedure. *Id.* Whether 23(b)(2) contains an opt-out procedure could not be determined again because that case was not the one on appeal. *Id.* This Court does not interpret this decision to state that Rule 23(b)(2) contains an opt-out procedure; the Supreme Court refused to pass on that issue. Rather, the Court finds there is no clear cut decision as to whether Rule 23(b)(2) contains an opt-out procedure. Nor is there a decision as to whether the tenets of procedural due process would require an opt-out procedure in cases where monetary damages predominate.

Because there appears to be no clear cut right to opt out of a Rule 23(b)(2) class action, the named Plaintiffs are asking the class members being represented here to risk waiving their right to monetary damages solely so the action for disparate treatment can proceed as a class action. Although the opt-out issue has not been fully decided, the Court is unwilling to risk this result. The decision by the named Plaintiffs to drop the monetary damages claim cannot be imposed upon the absent class members without raising a very serious conflict of interest. This conflict prevents certification of the proposed class for the claims as stated.

Given the discretionary nature of the class action rule, the Court is not willing to gamble away the proposed class members' potential rights to compensatory damages in this case. The lack of an opt-out provision and the very high risk of a preclusive effect of any class judgment on the claims for intentional discrimination makes this a very real risk. From the little evidence on the merits the Court has seen, and without deciding the merits of the case, the Court's suspicions have been aroused. It is admirable that

some of the named Plaintiffs have expressed an overriding desire to end any existing discrimination for future generations of workers. But even some of the named Plaintiffs also expressed a desire at the September 11, 1998 hearing to pursue monetary, damages. The class members the Plaintiffs seek to represent must be given the opportunity to pursue intentional discrimination claims and seek monetary damages, and certifying this class may very well deny them just that chance.

### E. Federal Rule of Civil Procedure 23(b)(2) Certification

Once the requirements of Rule 23(a) are met, the class can be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

Plaintiffs allege that they have satisfied the requirements of Rule 23(b)(2) because TEPI's employment policies have had a discriminatory effect on the class.

TEPI alleges that Rule 23(b)(2) does not allow the certification of a class where the predominant relief sought is monetary. In fact, TEPI alleges that 23(b)(2) is inappropriate where monetary relief, in any form, is sought.

#### 1. Rule 23(b)(2) Certification Inappropriate where Predominant Relief Sought is Monetary

Certification under Rule 23(b)(2) is appropriate where the class seeks injunctive or declaratory relief. *Allison,* 151 F.3d at 411. Where a class seeks *only* injunctive or declaratory relief, certification under 23(b)(2) is appropriate. *Id.* Rule 23(b)(2) is silent, however, as to the availability of monetary damages. *Id.* The Advisory Committee Notes, as the Fifth Circuit points out, "state that class certification under (b)(2) 'does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.'" *Id.* (citing Fed.R.Civ.P. 23 (advisory committee notes)). The Fifth Circuit has interpreted this language to

mean that some form of monetary relief is permissible in a(b)(2) class action as long as the "predominant relief sought is injunctive or declaratory." *Allison,* 151 F.3d at 415. The Fifth Circuit noted another reason why monetary relief might be inappropriate for a Rule 23(b)(2) class action: lack of commonality. *Id.* at 413.

> The underlying premise of the (b)(2) class—that its members suffer from a common injury properly addressed by class-wide relief—'begins to break down when the class seeks to recover back pay or other forms of monetary relief to be allocated based on individual injuries.' ... Thus, as claims for individually based money damages begin to predominate, the presumption of cohesiveness decreases while the need for enhanced procedural safeguards to protect the individual rights of class members increases ... thereby making class certification under (b)(2) less appropriate. *Id.* (citations omitted).

In *Allison,* decided August 18, 1998, the Fifth Circuit faced a remarkably similar set of facts. The *Allison* plaintiffs were African–American hourly employees who alleged a pattern of discrimination at the defendant's oil and gas plant. *Id.* at 407. The Fifth Circuit held, in part, that parties to a 23(b)(2) class action can recover monetary relief only if the predominant relief sought is injunctive or declaratory. *Id.* at 411. Monetary relief predominates when the money sought is less of a group remedy and instead depends somewhat on the merits of each potential class member's case. *Id.* at 413. Monetary damages do not predominate if they are incidental to the injunctive relief—that is, if they flow automatically from the equitable relief sought. *Id.* at 415. Monetary relief predominates "when its presence in the litigation suggests that the procedural safeguards of notice and opt-out are necessary." *Id.* at 413.

Full monetary relief, if the Plaintiffs' allegations are true, is readily available in this case. However, the Plaintiffs in this case dropped their claims for monetary damages beyond back pay to avoid the Fifth Circuit's decision in *Allison.* This decision leaves the Plaintiffs with only equitable relief available.

Therefore, monetary relief no longer prevails in this case—even if perhaps it should.

### F. Class Action and Judicial Economy

■ A class action is designed to promote judicial economy. And even where not all issues or parties can be joined in a class action, the vehicle may be useful to dispose of some claims or parties in a more economic manner despite the absence of the other parties or claims.

In this case, the limited statistical and anecdotal evidence before the Court is enough to give it pause for concern; but, contrary to the adage, there is not always fire where there is smoke. If the proposed class members are correct in their allegations of widespread disparate treatment of minority workers and can prove it, then they would be entitled to compensatory and even punitive damages. An unfortunate by product of the availability of these damages is that hampers the ability to maintain a class action. Plaintiffs urge that the Court certify a class to provide equitable relief and those plaintiffs who still wish to seek damages may do so individually. Defendants urge that the class members would be barred from doing so. The Court believes that res judicata might bar the class members, as discussed *supra,* but even if this is not the case, judicial economy is not well served by proceeding with this lawsuit under the circumstances. If the Plaintiff's claims are valid, then this decision, though it may somewhat hinder the Plaintiffs' lawsuit initially, will eventually result in more appropriate compensation for the harm the Plaintiffs allege they have suffered.

### CONCLUSION

The Court finds that Plaintiffs have failed to prove the requirements for class certification. The proposed class members assert disparate impact caused by TEPI's facially-neutral policy of decentralization of human resources decisions. This decentralized policy, however, also results in numerous, widely varying rules throughout the proposed class period and across numerous business units and destroys the typicality and commonality requirements for class certification. Plaintiffs also allege disparate treatment by a pattern and practice of intentional activity designed to prevent the promotion of the class. The Court believes that such a claim does not lend itself to a class action given the individual reasons TEPI will argue for each challenged decision. While some decisions may be rank with racial animus, others may not, and this may harm the class. Most importantly, the Court is very concerned with the named Plaintiffs' decision to drop the claim for damages in order to maintain a class action. If TEPI is correct in stating that the class would thus be barred from seeking compensatory damages in subsequent individual lawsuits, and the Court believes this to be the case without so holding, then a serious conflict exists. If the Plaintiffs are correct in stating that no such bar exists, then the Court still faces up to 200 individual lawsuits in the future on largely the same issues. Either result defeats the primary purpose of class certification.

The Court is cognizant of the serious nature of the claims before it as well as the frustration the proposed class feels. The Plaintiffs believe that they have been left out of the settlement of another lawsuit. Whether this is the case is immaterial to the Court's present decision. The Court will tailor its decision to allow the Plaintiffs to continue their discovery attempts and to make liberal use of the joinder rules if they feel this assists them in their principal case.

Finally, the Court also recognizes that TEPI has offered early retirements as part of a downsizing and that these retirement offers include liability waivers that could affect the rights of the class that was proposed here. There is little that the Court can do to change this. Employees that feel that they have a valid claim against TEPI will simply have to decide whether to join this lawsuit in progress, if they are inclined and allowed to do so; file an individual lawsuit; or, accept TEPI's offer of retirement and accompanying waiver. The Court does not belittle the gravity of this decision, but it is one over which the Court is unwilling to exercise control.

The Court accordingly **DENIES** the Plaintiffs' Amended Motion for Class Certification **WITHOUT PREJUDICE.**

The Court further ORDERS that the Plaintiffs have until December 31, 1998 to amend their complaint to join those parties they feel are necessary and to revive, to the extent that it has been dropped, their claim for compensatory and exemplary damages. This Order alleviates the necessity of Plaintiffs seeking leave to amend. Leave is hereby given.

The Court further ORDERS the parties to submit a revised Scheduling Order no later than November 30, 1998.