**Shelby McKNIGHT, et al., Plaintiffs,**

v.

**CIRCUIT CITY STORES, INC., Defendant.**

**Civil Action No. 3:95CV964.**

United States District Court,
E.D. Virginia,
Richmond Division.

Aug. 23, 1996.

Mark Edward Rubin, John Adrian Gibney, Jr., Shuford, Rubin & Gibney, P.C., Richmond, VA, Michael James Wendorf, Shaw, Pittman, Potts & Trowbridge, Washington, DC, Joseph M. Sellers, Washington Lawyers' Committee For Civil Rights and Urban Affairs, Washington, DC, Maureen Byrne Beahn, Shaw Pittman Potts & Trowbridge, Washington, DC, Warren K. Kaplan, The Washington Lawyers' Committee For Civil Rights and Urban Affairs, Washington, DC, David J. Cynamon, Edward J. Reed, Washington, DC, Phillip D. Bostwick, Shaw, Pittman, Potts & Trowbridge, Washington, DC, for Shelby McKnight, Gregory Fleming, Renee Lowery, Nadra Smith, Ponnette Smith, Sheila Smith, Patricia Spencer, Edward Stokes, Lisa S. Peterson.

Ky Kirby, Swidler & Berlin, Washington, DC, Pamela Gwynne Parsons, Circuit City Stores, Inc., Richmond, VA, Teri Craig Miles, McGuire, Woods, Battle & Boothe, Richmond, VA, Karen Yvonne Kerley, Widler & Berlin, Washington, DC, Gerald S. Hartman, Gregory W. Homer, Swidler & Berlin, Washington, DC, W. Stephen Cannon, Circuit City Stores, Inc., Richmond, VA, Leon B. Kellner, Dickstein, Shapiro, Morin & Oshinsky, Washington, DC, John E. Menditto, Swidler & Berlin, Washington, DC, Deborah S. Donovan, Dickstein, Shapiro, Morin & Oshinsky, Washington, DC, Circuit City Stores, Inc.

## MEMORANDUM OPINION

SPENCER, District Judge.

### I. Introduction

THIS MATTER is before the Court on plaintiffs' motion to sever and bifurcate the jury trial scheduled to commence on October 28, 1996. Because of fairness and efficiency considerations, the Court will DENY the motion, DECERTIFY the class, and IMPLEMENT a new trial plan.

### II. Procedural History

The above-entitled action was filed as an employment discrimination class action on October 31, 1995, in the United States District Court for the District of Maryland, Southern Division, in Greenbelt, Maryland. The putative class of plaintiffs in the action is comprised of current or former employees of Circuit City Stores, Inc. ("Circuit City") who are suing for discrimination in promotion and transfer opportunities. The amended complaint describes Circuit City's alleged discriminatory practices as:

> making personnel decisions using procedures and criteria for selection that are excessively subjective and that are used for the purpose, and have the effect, of denying opportunities for promotion and transfer to qualified [black] employees [at Circuit City's Headquarters] because of their race and that are not related to the position in question and consistent with business necessity.

Pursuant to 28 U.S.C. § 1404(a), district court in Maryland transferred the case to this Court on November 29, 1995. On April 1, 1996, plaintiffs moved to certify themselves as a class, and on April 30, 1996, the Court conditionally certified the class under Federal Rule of Civil Procedure 23(b), and subsequently set the case for trial by jury, to commence on October 28 1996. On June 13, 1996, the Court approved plaintiffs' proposed letter to all class members, informing them of the conditional class certification, the trial date, and of a toll-free telephone number they could call to speak with plaintiffs' attorneys about the case. Discovery has been ongoing and plaintiffs have filed a list of 46 non-named class members who they plan to call as trial witnesses and acknowledged the existence of perhaps 200 additional class members with claims.

### III. Statement of the Case

Plaintiffs have moved for the Court to sever the issues in this action and adopt a bifurcated trial plan whereby this case would be tried in two stages. Under plaintiffs' proposed plan, in Stage I, a single jury (the "Class Jury") would resolve separate issues in three phases, with the Class Jury's decision in each phase to be followed immediately by the trial of the next phase. The Class Jury would address the following issues during the three phases of Stage I:

> *Phase 1:* The Class Jury in this phase would address class-wide liability issues,

including specifically the issue of whether defendant Circuit City Stores engaged in a class-wide pattern or practice of racial discrimination with respect to promotions and transfers at its corporate Headquarters in Richmond.

*Phase 2:* During this phase, the Class Jury would determine the claims for compensatory damages of the named plaintiffs, and the Court would determine whether the named plaintiffs are entitled to any equitable remedies.

*Phase 3:* During Phase 3, the Class Jury would determine whether Circuit City is liable to the class for punitive damages and, if so, the amount of such damages to be awarded.

At the conclusion of Stage I, the Class Jury would be discharged and, if appropriate, the Court would grant any declaratory and/or injunctive relief. If there were a finding of class-wide discrimination by the Class Jury during Stage I, then Stage II proceedings would commence. These Stage II proceedings would occur in four phases as follows:

*Phase 1:* Within thirty (30) days of any verdict of class-wide discrimination by the Class Jury in Stage I, a notice would be sent, at Circuit City's expense, to each member of the class, together with a questionnaire requiring a response within thirty (30) days of receipt.

*Phase 2:* Following receipt of the questionnaires, the parties would be permitted to conduct limited discovery concerning class members' claims. The Court would determine at a later date the amount of time to be allotted for such discovery.

*Phase 3:* Following completion of defendant's additional discovery of class members, the class members' claims would be tried to a series of separate juries ("Separate Juries"), each sitting for approximately two (2) weeks, until all claims of all class members have been heard. These Separate Juries would determine whether each class member was a victim of Circuit City's allegedly discriminatory conduct and, if so, the amount of compensatory damages to be awarded to that class member. The Court would determine during these separate trials whether the class member is entitled to any equitable remedies.

*Phase 4:* Following completion of all claims of all class members by the Separate Juries, the Court would review the total amount of all compensatory damages and backpay awarded to both the named plaintiffs and the class members in Stages I and II of the trial, and compare it with the amount of punitive damages, if any, awarded by the Class Jury in Stage I. Thereafter, the Court would award each named plaintiff and each class member receiving compensatory damages and/or backpay, a portion of the total punitive damages approved by the Court following its review. The award would be in the same proportion that each claimant's compensatory damages and/or backpay bears to the total of all compensatory damages and backpay awarded to the named plaintiffs and all class members. Should the Court conclude, following its review, that the total amount of punitive damages awarded by the Class Jury is too large to be upheld under applicable law, the Court would order a remittitur of an appropriate portion of the punitive damages before they are distributed to the claimants.

## IV. Analysis

### A.

■ Defendant has opposed the proposed trial plan, claiming that it is unconstitutional, unfair, and unmanageable. As noted above, the Stage I/Stage II bifurcation, with separate juries at both stages, will require separate juries to reexamine evidence and issues that a prior jury has decided. Defendant first argues that the Seventh Amendment of the United States Constitution forbids reexamination when the issues before the two juries are "interwoven." Citing a recent case from the United States Court of Appeals for the Seventh Circuit, defendant avers that plaintiffs' plan fails "to carve at the joint" and unconstitutionally "divide[s] issues between separate trials in such a way that the same issue is reexamined by different juries." *In the Matter of Rhone–Poulenc Rorer, Inc.* 51 F.3d 1293, 1302–03 (7th Cir.), *cert.*

*denied,* —— U.S. ——, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995) (citations omitted).

Defendant also contends that the Stage I jury could not properly assess punitive damages for the entire class rationally and fairly, an argument the Court agrees with and adopts. Plaintiffs want the Stage I jury to award punitive damages to the entire class based on evidence limited to (1) disparate treatment as to the class, and (2) actual harm and compensatory damages as to the named plaintiffs only. In other words, the first jury would make its determinations without the entire universe of information, including actual harm to the individual class members and information regarding defendant's potential legitimate non-discriminatory reasons for its allegedly adverse employment actions. This is not fair to the defendant. The essential issues of motive and intent, reprehensibility, and relationship of a class-wide punitive damages claim to proven harm would not be fully developed or decided until the contemplated Stage II trials, and could not be resolved as to the class as a whole until all those trials were complete.

Moreover, Stage II anticipates the non-named class members claims being tried to a series of separate juries, sitting approximately two weeks at a time, until all the individual claims are heard. This method would prove to be no more expedient than the traditional handling of civil cases. In addition, all of the evidence defendant may bring forth to rebut the individual claims would be relevant and admissible at plaintiffs' proposed Stage I, including Phases 1, 2, and 3. The same evidence would be relevant and admissible at the remaining separate trials in Stage II. Again, the proposal is inefficient and the Court declines to adopt plaintiffs' proposed trial plan.

#### B.

■ Having followed the case closely and gained a sense of the size of the class as well as the issues that must be hammered out, the Court concludes that Rule 23(b) class certification is not the most fair and efficient way to litigate plaintiffs' claims. Plaintiffs proposed trial schedule now makes it clear to the Court that the benefits of class certifica-

tion, *i.e.,* accelerated and efficient disposition, will not necessarily follow in this case, but unfairness to the defendant *is* a likely result. Certainly there are cases where the sheer size of a class and the complexity of the common issues would lead a court to conclude that efficiency factors override certain considerations of fairness. Indeed, the fairness concerns that I have identified in this case are not of unconstitutional proportions. But they are factors a district court should consider in exercising the discretion inherent in Rule 23(b). Here, the efficiency problems, combined with the unfairness issues, lead the Court to determine that the class action procedure is not the best method of case management.

#### C.

With this in mind, the Court finds that the case can now best be handled in the following manner. The trial of the named plaintiffs' claims will proceed as scheduled on October 28, 1996, where the issues of individual liability, damages, and punitive damages will be litigated. The discovery deadline is extended until September 17, 1996, and dispositive motions must be filed no later than September 27, 1996.

At trial, the named plaintiffs will be allowed to produce evidence of pattern and practice discrimination, including evidence from the 46 non-named plaintiffs relevant to the issue of pattern and practice. Defendant will be permitted to put on a full defense to the pattern and practice claims. If there is a finding of pattern and practice discrimination, defendant will be collaterally estopped from denying the existence of such discrimination at subsequent trials. Future plaintiffs must file individual suits and pay the filing fees, reducing the number of frivolous and *de minimis* claims. The Court then may choose to consolidate some of the subsequent suits and try them in bulk as it sees fit.

### V. Conclusion

When all is said and done, even if plaintiffs are able to establish that Circuit City's allegedly excessive subjective decisionmaking is a corporate device which makes individual cases of discrimination possible, or even

probable, the focus of each individual plaintiff's proof, defendant's response to each plaintiff, and the jury's inquiry is whether each individual employment decision was motivated by intentional racial discrimination. The Court finds that it is more fair and efficient to handle the case as outlined and decertifies the class.

An appropriate Order shall issue.

### ORDER

THIS MATTER is before the Court on plaintiffs' motion to sever and to adopt a bifurcated trial plan. For the reasons stated in the accompanying Memorandum Opinion, the Court DENIES the motion, DECERTIFIES the class in this action, and IMPLEMENTS a new case management plan. In accordance with the trial plan outlined in the Memorandum, the discovery deadline is extended until September 17, 1996, and dispositive motions must be filed no later than September 27, 1996.

It is SO ORDERED.