Polly A. MILLER, et al.,

v.

BALTIMORE GAS & ELECTRIC COMPANY, et al.

No. Civ. CCB–00–2808.

United States District Court, D. Maryland.

Aug. 9, 2001.

Timothy B. Fleming, Grant Morris, Daria E. Neal, Lori B. Kisch, Gordon Silberman Wiggins & Childs, P.C., Washington, DC, for plaintiffs.

John L. Wood, Baltimore Gas and Electric Company, Ronald M. Cherry, McGuire Woods LLP, Kerry B. Fisher, Patrick R. Buckler, Baltimore, MD, Richard F. Kane, McGuireWoods, LLP, Charlotte, NC, for defendants.

### *MEMORANDUM*

BLAKE, District Judge.

The named plaintiffs are employees of the Calvert Cliffs Nuclear Power Plant. They have filed suit on behalf of themselves and a proposed class consisting of all other African–American employees of the plant seeking redress for alleged racial discrimination in the course of their employment. Currently pending are the defendants' Motion for an Order Determining that Plaintiffs may not Maintain this Class Action and Motion for Partial Summary Judgment, and the plaintiffs' Motion for Leave to File Amended Complaint. The motions have been briefed fully, and no hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, the court will deny without prejudice the defendants' motion for an order removing the class-wide claims, deny the motion for partial

summary judgment, deny without prejudice the plaintiffs' motion for leave to amend as to all changes relating to compensatory and punitive damages and grant that motion in all other respects.

## BACKGROUND

The eight named plaintiffs in this case are current employees of the Calvert Cliffs Nuclear Power Plant. On behalf of themselves and a putative class encompassing "all other African–American employees of the Defendants who work, have worked, or will work at the Calvert Cliffs Nuclear Power Plant," (*id.* ¶ 1), the named plaintiffs have sued the Baltimore Gas & Electric Company, Constellation Energy Group, Constellation Nuclear Group, L.L.P., and Calvert Cliffs Nuclear Power Plant, Inc. alleging systemic racial discrimination and harassment at the power plant. The plaintiffs estimate that the class will include more than 150 members. (*Id.* ¶ 21.) On behalf of the class, the plaintiffs seek relief under 42 U.S.C. § 1981 (Count I) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* (Count II). In addition, five of the named plaintiffs seek individual damages for retaliatory actions taken by the defendants (Count III).

The named plaintiffs have been employed at the power plant for varying lengths of time and in a variety of positions. Polly Miller was hired in March 1991 and currently holds the position of Radiation Safety Technician. (Compl.¶ 55.) Beverly Pickett was hired in December 1990 as a Dosimetry Technician and is employed currently in the Radiation Safety Unit. (*Id.* ¶¶ 66, 68.) Dante King was hired in November 1992 and has held the position of Welder ever since. Elbertino Dennis was hired in November 1990 as a Radiation Safety Technician. (*Id.* ¶ 86.) Phillip Sutton was hired in July 1983 as a Cleaner and currently holds the position of Painter in the Maintenance Department. (*Id.* ¶ 93.) Angela Washington–Sewell was hired in 1983 as a security guard and is employed currently as a Procedure Writer in the Maintenance Department. (*Id.* ¶ 100.) Michelle Patton was hired in December 1984 as a Dosimetry Technician and currently is an Instructor in the Technical Training Unit

of the Nuclear Training Section. (*Id.* ¶ 107.) Danny Adams was hired in 1979 as a security guard and is employed currently as a Plant Health Physicist. (*Id.* ¶ 116.)

Consistent with the named plaintiffs' work experiences, the complaint provides specific details supporting each named plaintiff's claim to have been subjected to racially motivated discrimination in the plant's "selection, transfer, testing, performance evaluation, compensation, and discipline policies, practices, and procedures," as well a hostile work environment. (*Id.* ¶¶ 55–123.) The specific allegations need not be repeated in order to resolve the current motions.

The Complaint was filed on September 20, 2000. On December 8, the defendants filed an answer and a Motion for an Order Determining that Plaintiffs may not Maintain this Class Action and Requiring the Plaintiffs to File an Amended Complaint that Eliminates all Class Action Claims. In response, the plaintiffs filed a Motion for Leave to File Amended Complaint in which they seek to remove all class-wide claims for compensatory and punitive damages. The defendants oppose the motion for leave to amend and have filed a Motion for Partial Summary Judgment as to Elberto Dennis' Title VII Claims and Class–Wide Claims of Title VII Discrimination. The three motions are addressed below.

## ANALYSIS

### I. Class Certification

The plaintiffs seek certification of their proposed class under either Fed.R.Civ.P. 23(b)(2) or 23(b)(3). The defendants have moved to eliminate the plaintiffs' class-wide claims on the grounds that the claims for compensatory and punitive damages preclude certification. As part of their opposition to that motion, the plaintiffs contend that it would be mooted if the court were to grant the plaintiffs motion for leave to file an amended complaint in which the claims for compensatory and punitive damages are stricken. Because it will deny the plaintiffs' motion for leave to amend at this time, the court addresses the defendants' motion as it relates to the original complaint.

Fed.R.Civ.P. 23 sets out the two-step process a court uses in certifying a proposed class. First, the class must satisfy the four prerequisites specified in Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. If those requirements are met, the court will determine if the class fits into one of the categories outlined in Rule 23(b). *See Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997); *Bostron v. Apfel,* 182 F.R.D. 188, 191 (D.Md.1998) ("Under the Rule, certification of a class action requires that the action meet the requirements of a two-step test.") (citation omitted). The Rule also requires that "[a]s soon as practicable after commencement of the action brought as a class action, the court shall determine by order whether it is to be so maintained," Fed.R.Civ.P. 23(c)(1), and grants the court the authority to "requir[e] that the pleadings be amended to eliminate therefrom allegations as to representations of absent persons, and that the action proceed accordingly ...," Fed.R.Civ.P. 23(d)(4).

In their motion pursuant to Rule 23(d)(4), the defendants do not challenge the plaintiffs' ability to satisfy the Rule 23(a) requirements. Rather they assert that, even assuming the 23(a) standards are met, the proposed class cannot meet the criteria for certification under either Rule 23(b)(2) and 23(b)(3).

■ Briefly, Rule 23(b)(2) permits class certification in cases in which "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole...." Fed.R.Civ.P. 23(b)(2). Certification is appropriate, therefore, when injunctive or declaratory relief is sought on behalf of a class of similarly situated plaintiffs. "The fact that the class plaintiffs seek damages does not preclude certification under this subsection; however, Rule 23(b)(2) certification is appropriate only where the relief sought is primarily injunctive or declaratory." *Hewlett v. Premier Salons Int'l, Inc.,* 185 F.R.D. 211, 218 (D.Md.1997) (citation omitted). Thus, a Rule 23(b)(2) class is improper where "the appropriate final relief relates exclusively or predominantly to money damages." Fed. R.Civ.P. 23 (advisory committee notes). *See Zimmerman v. Bell,* 800 F.2d 386, 389 (4th Cir.1986); *Adams v. Henderson,* 197 F.R.D. 162, 170 (D.Md.2000); *Peoples v. Wendover Funding, Inc.* 179 F.R.D. 492, 500 (D.Md. 1998) (stating that Rule 23(b)(2) "is not intended to reach cases where the Plaintiffs primarily seek damages.").

Claims primarily for monetary relief, on the other hand, are subject to certification under Rule 23(b)(3). A Rule 23(b)(3) class action may be certified if

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3).[1]

"For many years Rule 23(b)(2) was the normal basis of certification in Title VII pattern-or-practice cases." *Jefferson v. Ingersoll Int'l Inc.,* 195 F.3d 894, 896 (7th Cir. 1999). The uniformity of that practice changed when the Civil Rights Act of 1991 was passed because it allowed prevailing plaintiffs to seek compensatory and punitive damages, in addition to equitable relief. *See id.*[2] The defendants contend that class-wide "claims for compensatory and punitive dam-

---

1. The Rule provides a list of factors to be considered by the court in analyzing the predominance and superiority requirements:

   The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
   Fed.R.Civ.P. 23(b)(3).

2. Claims for backpay generally have been considered equitable in nature. *See Landgraf v. USI Film Prod.,* 511 U.S. 244, 252–53, 114 S.Ct. 1483, 1490–91, 128 L.Ed.2d 229 (1994); *Jefferson,* 195 F.3d at 896; *Pandazides v. Virginia Bd. of Educ.,* 13 F.3d 823, 832 (4th Cir.1994).

ages preclude class certification under 23(b)(2) and/or 23(b)(3) as a matter of law." (Def.s' Reply Supp.Mot. for Order at 6.)

■ In support of their argument, the defendants rely primarily on the Fifth Circuit's opinion in *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir.1998). In that case, the court upheld the district court's refusal to grant certification under 23(b)(2), (b)(3), or a combination of the two where the plaintiffs sought monetary relief under Title VII and § 1981. The defendants argue that *Allison* stands for the proposition that, as a matter of law, discrimination claims under Title VII and § 1981 cannot be certified under 23(b)(2) when the plaintiffs seek compensatory or punitive damages because the damages are not incidental to the equitable relief sought. (Mem.Supp.Mot. for Order at 7–9.) Similarly, they argue that certification under 23(b)(3) is impossible because individual concerns outweigh the legal questions common to the class and because a class action is not superior to other mechanisms for resolving the dispute. (*Id.* at 12–15.) Finally, the defendants argue that this court adopted *Allison* in *Adams v. Henderson,* 197 F.R.D. at 171–72.

The court disagrees with the contention that either *Allison* or *Adams* issued a *per se* rule prohibiting certification of all Title VII or § 1981 claims for racial discrimination when the plaintiffs seek compensatory or punitive damages. Rather, the court agrees with the analysis of *Allison* undertaken by the District Court for the Eastern District of Texas:

> *Allison* did not hold that the district court could not fashion a satisfactory method for disposing of the questions presented in a class action which included both injunctive relief under Rule 23(b)(2) and also claims for legal relief under 23(b)(3). Rather, it held the district court did not abuse its discretion in failing to certify a class in view of the 1991 amendments to the discrimination statute.

*Smith v. Texaco, Inc.,* 88 F.Supp.2d 663, 681–82 (E.D.Tex.2000). *See also Hoffman v. Honda of Am. Mfg., Inc.,* 191 F.R.D. 530, 534–35 (S.D.Ohio 1999); *Adams v. R.R. Donnelley & Sons,* 2001 WL 336830, *17 (N.D.Ill.2001) (finding that *Allison* does not "hold that claims for compensatory damages ... necessarily render[ ] Rule 23(b)(3) certification inappropriate," and certifying a partial (b)(3) class). Similarly, the court in *Adams v. Henderson* did not prohibit all such class actions but, rather, concluded that, on the facts of that case, the proposed certification was improper under both 23(b)(2) and 23(b)(3). 197 F.R.D. at 171–72.[3]

Initially, the court notes that it has "broad discretion in deciding whether to certify a class." *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 757–58 (4th Cir.1998), *vac. on other grounds,* 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790. Further, "[t]he three categories are not mutually exclusive, and a class may be certified under more than one category." *Eubanks v. Billington,* 110 F.3d 87, 91 (D.C.Cir.1997) (citation omitted). Indeed, several courts have determined that options for class certification may exist in racial discrimination claims. The Seventh Circuit has suggested that a Rule 23(b)(2) class with an opt-out provision, or a divided certification in which "[i]t is possible to certify the injunctive aspects of the suit under Rule 23(b)(2) and the damages aspects under Rule 23(b)(3)" may warrant consideration. *Jefferson,* 195 F.3d at 898. *See also Lemon v. Int'l Union of Operating Engineers, Local No. 139, AFL—CIO,* 216 F.3d 577, 582 (7th Cir.2000) (remanding to the district court for consideration of the certification options explained in *Jefferson* ). Similarly, the D.C. Circuit stated that "when a(b)(2) class seeks monetary as well as injunctive or declaratory relief the district court may ... adopt a 'hybrid' approach, certifying a(b)(2) class as to the claims for declaratory or injunctive relief, and a(b)(3) class as to the claims for mone-

---

**3.** The court acknowledges that *Allison* could be fairly read to preclude certification of a(b)(2) class in which the plaintiffs seek compensatory and punitive damages on behalf of the individual members of the class. *See Hoffman,* 191 F.R.D. at 536 (stating that under *Allison,* "money dam-

ages *are* predominant, unless they ... flow directly from the liability to the class as a whole...."). At this stage, the court is not required to address that question because it has concluded that certification more generally is not precluded as a matter of law.

tary relief" or certify a(b)(2) class with an opt-out provision. *Eubanks,* 110 F.3d at 96.[4]

·Alternative methods for certification have been used by several district courts, including this one. *See Kernan v. Holiday Universal, Inc.,* 1990 WL 289505, *7–8 (D.Md. Aug.14, 1990) (certifying a(b)(2) as to "liability and classwide damages," and allowing a second, non-class stage for individual damages, in the event they are warranted).[5] *See also Morgan v. United Parcel Serv. Of Am., Inc.,* 169 F.R.D. 349, 358 (E.D.Mo.1996) (severing the issue of compensatory damages and certifying a 23(b)(2) class to resolve the equitable issues); *Diaz v. Hillsborough County Hospital Authority,* 165 F.R.D. 689, 695 (M.D.Fla.1996) (certifying a "hybrid" class in which the issue of liability would be resolved using a(b)(2) class, and then damages determined using the (b)(3) opt-out procedures); *but see Reap v. Continental Casualty Co.,* 199 F.R.D. 536, 547 (D.N.J.2001) (following *Allison* and refusing to certify a(b)(2) or (b)(3) class); *Burrell v. Crown Central Petroleum, Inc.,* 197 F.R.D. 284, 292 (E.D.Tex. 2000) (refusing to bifurcate compensatory and punitive damages claims). Moreover, this court has certified a Rule 23(b)(2) class in a case in which patrons of a chain of hair salons alleged that they were discriminated against on the basis of their race. *See Hewlett,* 185 F.R.D. at 222.

Accordingly, the court does not agree that class certification is precluded as a matter of law. *See Hoffman,* 191 F.R.D. at 536 (rejecting "the Defendant's request that it rule, *as a matter of law,* that this litigation cannot be certified pursuant to Rule 23(b)(2), merely because the Plaintiffs have requested compensatory and punitive damages under § 1981a.") (emphasis in original).

In light of this conclusion, the next step is to allow the plaintiffs appropriate discovery on class certification issues. At the time the defendants' motion was filed, no discovery had been conducted. On February 12, 2001, the court issued an order permitting written discovery only as to "issues arising from the allegations of the eight individual plaintiffs. . . ." (CCB–00–2808, Order issued Feb. 12, 2001.) There has not been discovery, however, on the issues related to maintaining the class action. The Fourth Circuit has stated that:

> [t]he court may, and often does, permit discovery relating to the issues involved in maintainability, and a preliminary evidentiary hearing may be appropriate or essential as a part of the vital management role which the trial judge must exercise in class actions to assure that they are both meaningful and manageable.

*Doctor v. Seaboard Coast Line R.R. Co.,* 540 F.2d 699, 707 (4th Cir.1976) (citations and punctuation omitted). *See also Philip Morris Inc. v. Nat. Asbestos Workers Medical Fund,* 214 F.3d 132, 135 (2d Cir.2000); *Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 571 (2d Cir.1982) ("[A] district court may be reversed for premature certification if it has failed to develop a sufficient evidentiary record from which to conclude that the [Rule 23(a) ] requirements . . . have been met.") (citation omitted); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 895 (7th Cir.1981) ("[s]ome degree of discovery may be appropriate in certain cases to aid making the necessary class determinations. The pleadings are expected to be of assistance, but more information may be needed.") (citing *Doctor,* 540 F.2d at 707); *Jones v. Diamond,* 519 F.2d 1090, 1098 (5th Cir.1975); *Bostron,* 182 F.R.D. at 192.

Such discovery is permitted because "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' " *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct.

---

4. Although this case was decided after 1990, it arose out of a discrimination charge that predated the enactment of the Civil Rights Act of 1990. Accordingly, the court did not consider the propriety of a class action in which compensatory and punitive damages were sought under § 1981. *Eubanks,* 110 F.3d at 89.

5. The plaintiffs in *Kernan* sued under § 1981 and 42 U.S.C. § 2000a seeking injunctive and declaratory relief, class-wide punitive damages, and individual compensatory damages for alleged discrimination in the terms and conditions of membership to an organization. 1990 WL 289505 at *1.

2364, 2372, 72 L.Ed.2d 740 (1982) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)). *See also Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 142–43 n. 2 (4th Cir.2001) ("While we do not view the merits of the underlying claims as relevant to the appropriateness of certification, the merits may on occasion inform the Court's exercise of discretion to grant early review of certification under Rule 23(f)."); *Alexander v. Fed. Bureau of Investigation*, 971 F.Supp. 603, 612 (D.D.C.1997) (allowing discovery because "[i]t is clear that there are common issues of law and fact that exist and plaintiffs should have the opportunity to separate the noncommon issues.").[6,7]

██ The burden of meeting the Rule 23 requirements falls upon the party seeking certification. *See Int'l Woodworkers v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1267 (4th Cir.1981); *Bostron*, 182 F.R.D. at 192 n. 6 (stating that it is "well settled in the Fourth Circuit that the proponent of class certification has the burden of establishing the right to such certification under Rule 23."). In this case, however, the plaintiffs have not had the benefit of any discovery in their attempt to make that showing.[8] Thus, the court will deny without prejudice the defendants' motion to dismiss the class claims. *See Gross v. Medaphis Corp.*, 977 F.Supp. 1463, 1475 (N.D.Ga.1997) (denying motion to dismiss class claims and denying motion to certify a class without prejudice subject to refiling after the close of class discovery). *See also McKnight v. Circuit City Stores, Inc.*, 168 F.R.D. 550, 553–54 (E.D.Va.1996) (granting a motion to decertify after the litigation plan revealed that class certification was not the most efficient to proceed), *vac. on other grounds by Lowery v.*

---

6. The defendants argue that such discovery is necessary only for the court to determine whether the requirements of Rule 23(a) have been met. (Def.s' Reply at 6–7.) No support has been provided for this assertion; the fact that a court used discovery to evaluate the 23(a) requirements does not mean that discovery in all such cases should be so limited. (*Id.* at 7, citing *Wagner v. Taylor*, 836 F.2d 578 (D.C.Cir.1987).) Moreover, the defendants challenge the plaintiffs' ability to satisfy the Rule 23(a)(4) adequacy of representation standard in their opposition to the plaintiffs' motion for leave to amend. Further, the defendants contend that such discovery is unnecessary because, as a matter of law, the plaintiffs cannot satisfy the Rule 23(b) requirements. Because the court does not agree, it concludes that discovery is warranted.

7. The following has been written about the potential complications involved in certifying a Rule 23(b)(3) class:

   Although easy to state, these prerequisites become rather opaque when an attempt is made to apply them.... The truth is that if one reads fifty or even a hundred cases involving predominance and superiority, a clear picture of what is happening under Rule 23(b)(3) does not emerge. A DaVinci or Michaelangelo could not draw a straight line through the subdivision (b)(3) cases.

   *Hewlett*, 185 F.R.D. at 219 (quoting *Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 355 (S.D.Ga. 1996)).

8. In *Stastny v. Southern Bell Telephone and Telegraph Co.*, 628 F.2d 267 (4th Cir.1980), the court reproduced a list of questions to be answered when determining whether the Rule 23(a) commonality question is satisfied in a Title VII class action. Though that provision is not at issue in this case, the list of questions is a useful guide to the issues upon which discovery might shed light. That information may be used in determining whether the 23(b) requirements have been met:

   (i) What is the nature of the unlawful employment practice charged—is it one that peculiarly affects only one or a few employees or is it genuinely one having a class-wide impact.
   (ii) How uniform or diverse are the relevant employment practices of the employer, considering matters such as: size of the work force; number of plants and installations involved; extent of diversity of employment conditions, occupations and work activities; degree of geographic dispersion of the employees and of intra-company employee transfers and interchanges; degree of decentralization of administration and supervision as opposed to the degree of local autonomy.
   (iii) How uniform or diverse is the membership of the class, in terms of the likelihood that the members' treatment will involve common questions.
   (iv) What is the nature of the employer's management organization as it relates to the degree of centralization and uniformity of relevant employment and personnel policies and practices.
   (v) What is the length of the time span covered by the allegations, as it relates to the degree of probability that similar conditions prevailed throughout the period.

   628 F.2d at 277 (quoting *Harriss v. Pan Am. World Airways, Inc.*, 74 F.R.D. 24, 41 (N.D.Cal. 1977)).

*Circuit City Stores, Inc.*, 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999). The plaintiffs will be given a deadline by which to file a motion for class certification, and the defendants will be free to present their arguments in opposition to that motion.[9]

## II. Motion for Leave to Amend Complaint

Along with their opposition to the defendants' motion to dismiss the class claims, the plaintiffs filed a Motion for Leave to File Amended Complaint. In that motion, the plaintiffs seek to remove statements from the original complaint that suggest they seek compensatory and punitive damages on behalf of the class. The plaintiffs contend that those statements were erroneous and that they intended to request only declaratory, injunctive, and other equitable relief on behalf of the class.[10] They do seek compensatory and punitive damages, however, for the five named plaintiffs who have stated claims for retaliation.

The defendants oppose the motion for leave to amend on the grounds that removing the claims for punitive and compensatory damages would preclude class certification under the Rule 23(a)(4) adequacy of representation standard. In making this argument, they rely on *Zachery v. Texaco Exploration and Production, Inc.*, 185 F.R.D. 230 (W.D.Tex.1999). In that case, the plaintiffs sought certification of a class action seeking relief against an oil company for racial discrimination under Title VII and § 1981. In their initial complaint, the plaintiffs sought declaratory and injunctive relief as well compensatory and punitive damages. *Id.* at 234. After the Fifth Circuit's ruling in *Allison*, the plaintiffs moved to amend their complaint

and motion for class certification to remove the claims for damages and, again, sought certification under Rule 23(b)(2). (*Id.*)

The court analyzed the decision to remove the claims for damages and determined that, even if it found in favor of the plaintiffs and awarded equitable relief,

> [i]t is a very real possibility, if not a probability, that another court of competent jurisdiction could determine that the proposed class members would be barred from bringing individual actions for damages arising from intentional acts of discrimination if the class obtained a finding of intentional discrimination in this Court.

*Id.* at 243. Because Rule 23(b)(2) does not contain an explicit opt-out provision and the court was unwilling to read one into it the court determined that the named plaintiffs could not adequately represent the class. *Id.* at 244. Specifically, the court concluded that

> [t]he decision by the named Plaintiffs to drop the monetary damages claim cannot be imposed upon the absent class members without raising a very serious conflict of interest. This conflict prevents certification of the proposed class for the claims as stated.

*Id.* See also *Smith v. Texaco, Inc.*, 88 F.Supp.2d at 679 ("This court would be more concerned if plaintiffs' counsel did not request compensatory and punitive damages.").

The defendants argue that the same rationale applies in this case and, indeed, that the argument is made more persuasive by the fact that 5 of the 8 named plaintiffs seek compensatory and punitive damages in their individual retaliation claims. In response, the plaintiffs rely on Fed.R.Civ.P. 15(a),

---

9. The court reiterates that its holding is limited to the determination that a class action is not prohibited as a matter of law; it issues no opinion as to the viability under Rule 23 of the proposed class in this case. In their motion for class certification, the plaintiffs will be required to show that this suit may be certified as a class action under Rule 23 and to develop a litigation plan that will allow the case, if certified as a class action, to proceed in an efficient and constitutional manner. Counsel should consider carefully whether a class action is in fact a "superior" method of resolving their clients' claims.

10. The plaintiffs also seek to amend four paragraphs unrelated to the issue of damages. The defendants do not provide specific argument against the proposed amendments as they relate to Nathan Fenwick's lawsuit or the number of plaintiffs stating claims for retaliation. (Mem. Supp.Mot. for Leave at 3.) They do argue that the proposed amendment relating to Elberto Dennis's right-to-sue letter should be denied as futile. (Def.s' Opp'n to Mot. for Leave at 7–16.) For the reasons discussed below, the court does not agree with this argument. Accordingly, leave to amend will be granted as to the four proposed changes that do not affect the damages sought.

which provides that leave to amend "shall be freely given when justice so requires," and on this court's statement that

> leave sought should be given "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."

*Diggs v. The Housing Authority of the City of Frederick*, 67 F.Supp.2d 522, 529 (D.Md. 1999) (quoting *Medigen of Kentucky, Inc. v. Public Service Comm'n of West Virginia*, 985 F.2d 164, 168 (4th Cir.1993)). The plaintiffs argue that because they did not mention compensatory or punitive damages in the original prayer for relief and because the references to such relief in the complaint were in error, they should be allowed to remove the erroneous statements.

The court notes, however, that in the original complaint, the plaintiffs sought "damages for mental anguish and punitive damages" in the § 1981 Count and "legal" relief in the Title VII Count (Compl.¶¶ 129, 135.) Moreover, in the proposed Amended Complaint, the plaintiffs still seek certification of a Rule 23(b)(3) class. (Amended Compl. ¶¶ 41–45.) Were the plaintiffs seeking solely injunctive and declaratory relief, certification of a 23(b)(3) class would be inappropriate as such class actions are used to procure legal relief.

Further, in response to the defendants' arguments based on *Zachery*, the plaintiffs argue that the defendants should not be permitted to force them into a "Hobson's Choice." (Pls.' Reply at 14.) In *Smith*, the District Court for the Eastern District of Texas confronted a similar situation and found that

> [t]he defendants are trying to force the class representatives into a Catch–22. If the representatives did not ask for money damages, surely the defendants could well have argued that they were not adequate class representatives. Because the repre-

sentatives did ask for money damages, the defendants now contend that certification is impermissible for this reason alone.

88 F.Supp.2d at 679. The plaintiffs contend that the absence of compensatory or punitive damages would not create a conflict because the court could certify a Rule 23(b)(2) class with an opt-out provision. *See id.* at 680.[11] Like the court in *Zachery*, however, the court is reluctant to read into Rule 23(b)(2) an opt-out provision if doing so is unnecessary. *See Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121, 114 S.Ct. 1359, 1361, 128 L.Ed.2d 33 (1994) (declining to resolve the issue); *Jefferson*, 195 F.3d at 897–98 (noting the "open question"). *Cf. Eubanks*, 110 F.3d at 92–94 (resolving "unsettled question" in favor of allowing (b)(2) opt-out rights). As discussed above, it may be possible to certify a Rule 23(b)(2) or (b)(3) class, or a hybrid as explained in *Jefferson* and *Kernan*. The viability of those options, however, should be determined after discovery.

In sum, the court finds that the proposed removal of the compensatory and punitive damages claims raises serious questions regarding the ability of the named plaintiffs to represent the putative class adequately. The court is unwilling to certify a 23(b)(2) class with an opt-out provision until it has determined that a more traditional (b)(2) or (b)(3) class cannot be certified. Accordingly, the Motion for Leave to File Amended Complaint will be denied without prejudice insofar as the plaintiffs seek to remove the claims for punitive and compensatory damages. After discovery is conducted pursuant to the holding above, the plaintiffs, should they so desire, may refile the motion for leave to amend and propose a manner in which the court should proceed with the class action under Rule 23(b)(2). The motion for leave to amend will be granted in all other respects.

### III. Motion for Partial Summary Judgment

The defendants have filed a motion for partial summary judgment in which they seek dismissal of plaintiff Elbertino Dennis's

---

**11.** The plaintiffs seem to argue that notice to the class would solve the adequacy problem. (Pls.' Reply at 16.) The court notes that notice without the opportunity to opt out might not resolve the potential conflict but merely make the class members aware of it.

Title VII claims. On the grounds that Mr. Dennis was the only plaintiff to have asserted such a claim on behalf of the class, the defendants also seek dismissal of the class-wide Title VII claims.

Before analyzing the merits of these arguments, some background is necessary. Plaintiffs Polly Miller, Beverly Pickett, and Dante King filed separate charges of discrimination with the EEOC in early 1999. Each alleged racial discrimination in the terms of his or her employment but did not expressly seek class-wide relief. (Pl.s' Opp'n, Ex. 1A, 2A, 6C.) On June 20, 2000, the EEOC issued right-to-sue letters to Ms. Miller, Ms. Pickett, and Mr. King. On June 28, 2000, Mr. Dennis filed a charge of discrimination in which he specifically claimed "classwide discrimination on the basis of race." (Pl.s' Opp'n at 10–11; *id.*, Ex. 6D.) He was mailed a right-to-sue letter dated September 19, 2000. (*Id.*, Ex. 6H.)

On September 20, 2000, the named plaintiffs filed this suit seeking the class-wide relief discussed above. In their complaint, the plaintiffs stated that, while Ms. Miller, Ms. Pickett, and Mr. King each had received right-to-sue letters, Mr. Dennis was "in the process of perfecting his Title VII right-to-sue." (Compl.¶ 5.) On January 4, 2001, the plaintiffs moved to amend the complaint to reflect the fact that Mr. Dennis had received a right-to-sue letter. (Mem.Supp.Mot. for Leave at 3.)

■ The defendants have moved to dismiss Mr. Dennis's Title VII claim on two grounds. They contend, first, that the plaintiffs were required to amend the complaint within 90 days of Mr. Dennis's receipt of the right-to-sue letter, which they failed to do, and, second, that the EEOC failed to investigate his charge adequately as evidenced by the fact that it issued the right-to-sue letter fewer than 180 days after Mr. Dennis filed his charge of discrimination. Because they contend that Mr. Dennis was the only named plaintiff to allege class-wide discrimination, the defendants argue that the class Title VII claims must be dismissed if Mr. Dennis's

claim is improper. These arguments are addressed in turn.

Title VII permits a plaintiff to file a civil action within 90 days of receiving a right-to-sue letter. 42 U.S.C. § 2000e–5(f)(1). The defendants contend that, because he had not received his right-to-sue letter prior to filing the complaint in this action, Mr. Dennis was required to file an amended complaint within 90 days to satisfy this requirement.[12] The court does not agree with this contention.

The cases cited by the defendants do, indeed, stand for the proposition that "the later issuance of the 'right-to-sue' letter, coupled with the filing of an amended complaint, cures any defect in jurisdiction." *Guerrero v. Reeves Bros., Inc.*, 562 F.Supp. 603, 606 (W.D.N.C.1983) (citing *Henderson v. Eastern Freight Ways, Inc.*, 460 F.2d 258, 260 (4th Cir.1972)). *See also Cross v. Alabama State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1504 (11th Cir.1995); *Berg v. Richmond Unified School Dist.*, 528 F.2d 1208, 1212 (9th Cir.1975), *vac. on other grounds*, 434 U.S. 158, 98 S.Ct. 623, 54 L.Ed.2d 375 (1977). They do not, however, determine that the failure to file an amended complaint within 90 days, merely to allege the receipt of the right-to-sue letter, defeats jurisdiction or requires dismissal.

Indeed, in *Henderson,* the case relied on in *Guerrero,* the Fourth Circuit did not require the filing of an amended complaint. *See Henderson,* 460 F.2d at 260 ("While up to the time this 'suit-letter' on the second charge was issued the pending complaint of the employee was properly subject to a motion to dismiss, the issuance of the 'suit-letter' validated the pending action, . . . ."). Though the Fourth Circuit has not specifically stated that an amended complaint is not required, it has never formally required one. *Cf. Davis v. Virginia Commonwealth Univ.,* 180 F.3d 626, 628 (4th Cir.1999) (finding that the plaintiffs were not required to file a second amended complaint when the defendants had been put on notice of the claim by the first amended complaint). That approach is con-

---

12. The court notes that Mr. Dennis might have received his right-to-sue notice prior to the filing of this lawsuit. The letter was dated September

19, and the suit filed on September 20. The plaintiffs have made no argument in this regard.

sistent with the case law from other jurisdictions. *See, e.g., Portis v. State of Ohio,* 141 F.3d 632, 634–35 (6th Cir.1998); *Forehand v. Florida State Hospital at Chattahoochee,* 89 F.3d 1562, 1567–71 (11th Cir.1996) (finding that the issuance of a right-to-sue letter is a precondition subject to equitable modification); *Perkins v. Silverstein,* 939 F.2d 463, 471 (7th Cir.1991) ("[T]he receipt of that [right-to-sue] letter after the complaint had been filed, but before it had been dismissed, effectively cured the deficiency in the original complaint."); *Gooding v. Warner–Lambert Co.,* 744 F.2d 354, 358 (3d Cir.1984) (concluding that, because a right-to-sue letter is not a jurisdictional prerequisite, the "failure to allege the issuance of the right-to-sue letter, which was not issued until after the complaint was filed, did not render the complaint deficient"); *Kane v. State of Iowa Dep't of Human Serv.,* 955 F.Supp. 1117, 1137–38 (N.D.Iowa 1997).

Accordingly, the court concludes that any pleading deficiency in the original complaint was cured when Mr. Dennis received his right-to-sue letter. Neither his individual Title VII claim, nor those asserted on behalf of the class, should be dismissed on this ground. Moreover, the plaintiffs' motion for leave to amend will be granted insofar as they seek to add the fact that Mr. Dennis has received a right-to-sue letter.

■ Next, the defendants argue that Mr. Dennis's Title VII claim must be dismissed because the EEOC issued his right-to-sue letter fewer than 180 days after he filed the charge of discrimination.[13] Title VII provides that:

If a charge filed with the Commission ... is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge ... the Commission has not filed a civil action ... or the Commission has not entered into a conciliation agreement to which the person ag-

grieved is a party, the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge....

42 U.S.C. § 2000e–5(f)(1). In addition, however, the supporting regulations allow EEOC to issue a right-to-sue letter

at any time prior to the expiration of 180 days from the date of filing the charge with the Commission; provided, that [an appropriate Commission official] has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge.

29 C.F.R. § 1601.28(a)(2) (1998). The defendants argue that the regulation conflicts with the language of Title VII and that, therefore, Mr. Dennis's claim is untimely because the early right-to-sue letter he received is invalid.

In making this argument, the defendants rely on *Martini v. Fed. Nat. Mortgage Ass'n,* 178 F.3d 1336, 1347 (D.C.Cir.1999), in which the D.C. Circuit found the regulation invalid and determined that "Title VII complainants must wait 180 days after filing charges with the EEOC before they may sue in federal court."[14] That determination, however, is the subject of a split of authority. The Ninth, Tenth, and Eleventh Circuits have reached the opposite conclusion and found that the regulation is a permissible exercise of the EEOC's authority. *See Walker v. United Parcel Serv.,* 240 F.3d 1268, 1273–77 (10th Cir.2001); *Sims v. Trus Joist MacMillan,* 22 F.3d 1059, 1061–63 (11th Cir.1994); *Brown v. Puget Sound Elec. Apprenticeship & Training Trust,* 732 F.2d 726, 729 (9th Cir.1984); *cf. Weise v. Syracuse Univ.,* 522 F.2d 397, 412 (2d Cir.1975) (evaluating an earlier version of the regulation).[15]

---

**13.** The right-to-sue letter was issued on September 19, 2000, 83 days after he filed his charge of discrimination.

**14.** The defendants also appear to argue that the regulation and statute can be read "in harmony" to prohibit suits within 180 days of the filing of an EEOC charge of discrimination. That, however, was not the holding in *Martini,* and finds

no support in the case law. *See* 178 F.3d at 1347–48 (invalidating the regulation on the grounds that it conflicted impermissibly with congressional intent).

**15.** Notably, the defendants failed to cite any of the cases contrary to *Martini,* including the opinion from this District. (Def.s' Reply at 5–6;

Although the Fourth Circuit has not confronted this issue, it has been decided by judges in this District in two published opinions, with opposing results. In the more recent opinion, Judge Williams concluded that "without some direction from the Fourth Circuit on this issue, this Court finds the reasoning as set forth in the Ninth and Eleventh Circuits' opinions to be convincing." *Thomas v. BET Sound–Stage Restaurant/BrettCo, Inc.*, 61 F.Supp.2d 448, 459 (D.Md.1999). The opposite conclusion was reached more than 20 years earlier in *Loney v. Carr–Lowrey Glass Co.*, 458 F.Supp. 1080, 1081 (D.Md.1978).

Upon examining the cases, the court agrees with Judge Williams, and finds the reasoning of the Ninth, Tenth, and Eleventh Circuits persuasive. *Cf. Vanguard Justice Soc'y, Inc. v. Hughes*, 471 F.Supp. 670, 682–89 (D.Md.1979). Accordingly, Mr. Dennis's claim is timely, and the defendants' motion to dismiss his Title VII claim will be denied.

■ Further, in response to the defendants' contention that the class-wide Title VII claims must be dismissed, the plaintiffs argue that the charges filed by Ms. Miller, Ms. Pickett, and Mr. King were sufficient to satisfy the EEOC requirements for the filing of a class action even though they did not state class-wide claims explicitly. As the Fourth Circuit has explained:

> An administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination.

*Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir.1981) (citing *Equal Employment Opportunity Commission v. General Electric Co.*, 532 F.2d 359 (4th Cir. 1976) and *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.1970)). *See also Lane*

*v. Wal–Mart Stores East, Inc.*, 69 F.Supp.2d 749, 755–56 (D.Md.1999). The scope of the complaint depends on the scope of both the EEOC charge and the reasonably expected investigation of that charge. *See Sharafeldin v. Maryland Dept. of Public Safety and Correctional Serv.*, 94 F.Supp.2d 680, 687 (D.Md. 2000) ("[F]ederal courts can exercise jurisdiction only over those claims 'encompassed within the EEOC charge and claims like or related to allegations in the charge, or which grow out of such allegations.' ") (quoting *Riley v. Technical & Mgmt. Serv. Corp.*, 872 F.Supp. 1454, 1459 (D.Md.1995)).[16]

Though it has evaluated the scope of an EEOC charge on several occasions, the Fourth Circuit has not addressed the specific question presented in this suit: whether a charge in which class-wide claims are not explicitly raised can support a class action lawsuit. The three Courts of Appeal that have reached the question have adopted two different standards. The Fifth and Ninth Circuits have found that an EEOC filing which does not raise class-wide claims explicitly nevertheless can support a class action if "an EEOC investigation of class discrimination on the basis of race *could reasonably be expected* to grow out of the allegations in the charges." *Paige v. California*, 102 F.3d 1035, 1042 (9th Cir.1996) (emphasis in original); *Fellows v. Universal Rest., Inc.*, 701 F.2d 447, 451 (5th Cir.1983). *See also Richardson v. Byrd*, 709 F.2d 1016, 1020 n. 4 (5th Cir.1983) (citing *Fellows*, for the proposition that "a class action may be based upon an EEOC complaint of individual discrimination . . . ."). The Seventh Circuit, on the other hand, has followed a more restrictive test in which the language of the charge itself is the focus of the inquiry. *See Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127–28 (7th Cir.1989). *See also Hoffman v. R.I. Enter., Inc.*, 50 F.Supp.2d 393, 400 n. 7 (concluding that, if confronted with the issue, the Third Circuit would follow *Schnellbaecher*).

Mem.Supp.Mot. for Partial Summ.J. at 6–8, 10–12.)

**16.** There is some question about the jurisdictional nature of the EEOC filing requirements. *See Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir.1989); *Vanguard*, 471 F.Supp. at 682–89. *See also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982) (stating that an EEOC filing is "not a jurisdictional prerequisite to filing a Title VII suit, but a requirement subject to waiver as well as tolling when equity so requires").

The courts seem to agree that a Title VII class claim is proper if it could reasonably have been expected to grow from the charge filed. *See Paige,* 102 F.3d at 1042; *Schnellbaecher,* 887 F.2d at 129; *Fellows,* 701 F.2d at 451. The approach differs in that the Seventh Circuit determined that "it is primarily the charge to which we look in determining whether the scope requirement is satisfied," *Schnellbaecher,* 887 F.2d at 127 (citation omitted), whereas the Ninth and Fifth Circuits adopted a more permissive standard based on the scope of the investigation that could reasonably be expected to grow from the charge.[17]

Contrary to the defendants' contention, however, the court does not read *Schnellbaecher* to mean that "a Charge of Discrimination must explicitly raise class claims in order to support a class action." (Def.s' Reply at 8.) Rather, the Seventh Circuit focused on

> the reason behind the requirement that allegations not contained in an EEOC charge cannot be contained in the complaint is that the defendant must have notice of the charge, and the EEOC must have the opportunity to investigate and conciliate the charge, in order to attempt to attain voluntary compliance with Title VII.

*Schnellbaecher,* 887 F.2d at 127. *Accord Scannell v. Bel Air Police Dept.,* 968 F.Supp. 1059, 1066 (D.Md.1997) (citing *Alvarado v. Bd. of Trustees of Montgomery Community College,* 848 F.2d 457, 460 (4th Cir.1988)).[18] The Seventh Circuit distinguished *Fellows* on the grounds that, because the EEOC charge in that case "contained allegations of several instances of discrimination, even though it contained no specific class-wide allegations," "one could infer a charge that it was the employer's policy to hire few women, as well as to discriminate against all women in promotions and pay." *Schnellbaecher,* 887 F.2d at 128.[19]

■ In this case, three EEOC charges were filed by employees alleging racial discrimination within the first three months of 1999. In his charge, filed January 21, 1999, plaintiff Dante King alleged that he had been subject to "racial harassment by White supervisors" for the previous five years, denied a pay increase to which he was entitled for the previous year, and "denied the opportunity to transfer to other departments." (Pl.s' Opp'n, Ex. 6C.) In her charge, filed March 5, 1999, plaintiff Polly Miller alleged that she was denied overtime regularly for a period of approximately 11 months in 1998, that she was "denied high profile assignments" "[r]epetitively since 1991," that she had to "request training automatically given to others" every year since being hired, that she was "repeatedly required to self-train," and that she was denied a specific promotion and removed from a particular position and placed in another. (*Id.,* Ex. 1A.) Finally, in her charge dated March 23, 1999, plaintiff Beverly Pickett alleged that "[o]n numerous occasions throughout the course of [her] employment, [she] was treated less favorably than others regarding hiring, promotion, transfer and salary" and describes the most recent example of such treatment. (*Id.,* Ex. 2A.) Thus, while not alleging class-wide discrimination, the three plaintiffs each allege a continuing pattern of racial bias.

The plaintiffs also argue extensively that a class-wide investigation was, in fact, conducted by the EEOC pursuant to the charges filed by Ms. Miller, Ms. Pickett, and Mr. King. (Pl.s' Opp'n at 4–11.) As support for this argument, they provide a series of affidavits from those three plaintiffs in which they claim to have been told that a class-wide

---

17. Indeed, the Ninth Circuit criticized the Seventh Circuit's approach on the grounds that it *"for all practical purposes* eliminated the 'reasonably to be expected investigation' factor from the test." *Paige* 102 F.3d at 1042 n. 9 (emphasis added).

18. In support of their reliance on *Schnellbaecher,* the defendants indicate that the case has been "cited to favorably by this Court on six occasions." (Def.s' Reply at 8 n. 1.) None of those

cases, however, cites *Schnellbaecher* for the test propounded by defendants.

19. The court also distinguished *Fellows* on the grounds that the plaintiff's attorney in that case sent a letter to the defendant informing it that a class action would be filed if a settlement was not reached. *Schnellbaecher,* 887 F.2d at 128. That letter, the court noted, put the defendant on notice that a class action was likely when it refused to answer the EEOC's questions. *Id.*

investigation was ongoing. (*Id.*, Ex. 1–3.) The defendants contend that the court must disregard these affidavits as inadmissible hearsay. (Def.s' Reply at 2–3, 7.) The court need not resolve this issue because "it is not the scope of the actual investigation pursued that determines what complaint may be filed, but what EEOC investigation could reasonably be expected to grow from the original complaint." *Schnellbaecher*, 887 F.2d at 128. The court does note, however, that Ms. Miller's charge of discrimination is marked "BGE Class Investigation." (Pl.s' Opp'n, Ex. 1A.) The court accepts that notation as evidence that some person at EEOC considered the possibility that Ms. Miller's charge warranted investigation as a class claim.

The court concludes that the contemporaneousness of the three charges, each of which alleges a series of racially discriminatory acts, was sufficient to put the defendants on notice that a class-wide investigation might reasonably result.[20] The court finds it unnecessary to address the differences among the Fifth, Seventh, and Ninth Circuits' approaches to this issue because it concludes that the charges in this case satisfy the relevant case law in each jurisdiction.

Accordingly, even if Mr. Dennis's claim explicitly raising class issues were subject to dismissal, the court finds that a class-wide investigation into racial discrimination in the workplace reasonably could have been expected to result from the EEOC charges filed by Ms. Miller, Ms. Pickett, and Mr. King. The defendants' Motion for Partial Summary judgment, therefore, will be denied on these grounds as well.

A separate Order follows.

### *ORDER*

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. The plaintiffs' Motion for Leave to File Amended Complaint is **denied without prejudice** as to all changes relating to compensa-

tory and punitive damages and **granted** in all other respects;

2. The defendants' Motion for an Order Determining that Plaintiffs may not Maintain this Class Action and Requiring the Plaintiffs to File an Amended Complaint that Eliminates all Class Action Claims is **denied without prejudice;**

3. Defendants' Motion for Partial Summary Judgment is **denied;**

4. Counsel shall submit a proposal for further discovery and motions deadlines in this case by September 7, 2001; and

5. Copies of this Order and the accompanying Memorandum shall be mailed to counsel of record.

---

20. Moreover, the defendants were sent a Notice of Charge of Discrimination on July 12, 2000. (Pl.s' Opp'n, Ex. 6I.) In that Notice, the defendants were provided a copy of Mr. Dennis's charge of class-wide discrimination and an opportunity to participate in a mediation program. (*Id.*) The letter constitutes an additional reason to find that the defendants had adequate notice that a class-wide claim was being pursued.